MASON *v.* COMMISSIONERS OF ROADS AND REVE-
NUES FOR DeKALB COUNTY, and *vice versa.*
MEDLOCK *v.* COMMISSIONERS, and *vice versa.*
SMITH *v.* COMMISSIONERS, and *vice versa.*
STEELE *v.* COMMISSIONERS, and *vice versa.*

1. Where the board of commissioners of roads and revenues of a given county issued against one who had been the treasurer thereof, and the sureties upon his official bond, an execution in substance reciting that the former had in his hands a specified sum of money belonging to said county (naming it), which he had failed to pay over or account for, and was therefore due and owing the said sum to said county (again naming it), the execution being directed to the sheriffs of this State and their lawful deputies, and commanding them, of the defendants' property, to make the said sum of money, with interest and costs, and have the same at the office of such board within a specified time, together with the execution and their actings and doings thereon, such execution was a process in the name and behalf of the county, and was a valid writ.

(*a*) When levies of such an execution were met by affidavits of illegality, the county was the real party plaintiff in the cases thus arising; and they should have been docketed and tried accordingly.

2. Whether an exception of fact to an auditor's report, alleging that he erred in finding that a specified amount had been paid to a bank upon a loan which had been made by it, instead of finding that another amount, naming it, had been paid upon such loan, was or was not sufficiently clear and definite, the overruling of the same by the trial judge will not warrant this court in sending the case back for another hearing, when it appears from the record that the finding of the auditor, as to this particular matter, was demanded by the evidence.

3. The court committed no error in striking, as not being sufficiently clear and definite, exceptions of fact to an auditor's report, which, in substance and in general terms, alleged error in finding that a party was liable in a stated sum, whereas, under the evidence submitted, such party was not liable at all; nor was there any error in striking other exceptions which alleged that the auditor erred in finding that a party had in his hands and failed to account for a named sum of money, instead of another and larger specified sum. Such exceptions did not plainly and distinctly point out wherein the auditor erred in reaching the conclusions reported by him as to these several matters.

4. Where the authorities in charge of the finances of a county borrowed money for county purposes without authority of law, giving for the same promissory notes in the name of the county, and the money thus unlawfully borrowed was received by the county treasurer as county funds and kept with the lawful money of the county, he was estopped from denying that he held this borrowed money by virtue of his office as treasurer, and was liable for the same upon his official bond; the more especially when

he participated in the unlawful borrowing of the money by signing his name officially to the county's notes.

(*a*) In view of the above, it is not, in the present cases, material whether the special defenses of the ex-treasurer, setting up the facts in reference to the unlawful borrowing of the money, were or were not filed too late.

5. In such a case the risk of the sureties, so far as related to their principal's accountability for the lawful money of the county, was not, in legal contemplation, increased by reason of the fact that the unlawfully borrowed money was placed in his hands ; but while they were liable for his failure to pay over or account for the lawful money, they were not liable for his failure to disburse or make settlement for the money so unlawfully borrowed.

6. If upon the trial of an issue formed by the filing of an affidavit of illegality to an execution issued against an ex-treasurer of a county and the sureties on his bond, for money alleged to be due to the county and not accounted for, it appears that, though the ex-treasurer has not accounted and settled for all the money which came into his hands from both lawful and unlawful sources, he has legally paid out sums exceeding the whole amount of the lawful money of the county which came into his hands, the burden rests upon the county of showing that the money for which the ex-treasurer has not accounted was a part of the lawful money of the county which went into his hands; and failing to do this, there can be no recovery against the sureties.

(*a*) Direction is given that the question of the sureties' liability be again referred to the auditor, with instructions to make another report thereon after further investigation in the light of what is above laid down as the law applicable; the auditor in conducting this additional investigation to take into consideration the evidence already submitted to him, and such other pertinent evidence as may be introduced by any party at interest.

Argued December 16, 1897. — Decided April 11, 1898.

Exceptions to auditor's report.    Before J. T. Pendleton, judge pro hac vice.    DeKalb superior court.    February term, 1897.

In January, 1893, J. A. Mason was elected treasurer of the County of DeKalb.    He had been treasurer for two preceding terms.    On February 1, 1893, he gave bond and took the oath of office.    The securities on his bond were W. B. Smith, W. P. Medlock, and M. A. Steele.    The condition expressed in the bond was, that "the said J. A. Mason shall faithfully discharge all of the duties of such office of county treasurer during the time he continues therein or discharges any of the duties thereof."    He continued in office until January 17, 1895, and was then succeeded by J. L. Johnson.    On February 11, 1895, the commissioners of roads and revenues for DeKalb county issued an execution against Mason and the securities on his

bond, for $14,652.08, with interest thereon at the rate of twenty per cent. per annum from February 1, 1895, with lawful costs. It is recited in the execution that J. A. Mason, county treasurer of DeKalb county for the years 1893 and 1894, fails to make settlements of his accounts for county money, and that there is in his hands, of money belonging to the county, a balance of $14,652.08, and that he fails to account therefor and to pay the same to his successor in office. This execution was levied, March 27, 1895, on property of the defendant Mason, and he filed an affidavit of illegality upon the ground that he did not, at the date of the issuance of the execution, have in his hands as treasurer of the county for the years 1893 and 1894, or any preceding year, any sum of money belonging to the county which he had failed to account for and pay over to his successor in office, and did not, at the date of the issuance of the execution, and does not now, owe any amount whatever to the county, as treasurer thereof, for the years 1893 and 1894, or any preceding year. Similar executions for other years were also issued and levied, and were likewise arrested. The cases were referred to an auditor with authority and direction to hear the same as to all questions of law and fact involved, and to report his findings and decision to the court. To his report the parties filed their exceptions as will appear from the opinion of the court, which states the other facts that are material here.

*W. W. Braswell* and *T. P. Westmoreland*, for plaintiffs in error. *Candler & Thomson*, contra.

Little, J. These cases were argued together in this court, and the main points ruling each of them are intended to be covered in this opinion.

1. A motion was made to quash the executions involved in these cases, because " they were issued in the name of the county board commissioners of roads and revenues for the County of DeKalb, when they should, under the law have been issued in the name of DeKalb County." This motion was overruled, and exception was taken thereto. By the act of December 8, 1886 (Acts 1886, p. 258), a board of commissioners of roads and revenues for the County of DeKalb was created. Among

other things, jurisdiction and power was vested in them to examine and audit all claims or accounts of officers having the care, management, keeping, collecting, or disbursement of money belonging to the county, or appropriated for its use and benefit, and bring them to a settlement, and generally to have and exercise all the powers that could be lawfully exercised by the inferior court when sitting for county purposes, or by the justices thereof, except as to proceedings and record in cases of lunacy, and to exercise such other powers as are granted by law, or are indispensable to their jurisdiction over county matters and county finances.  The executions complained of recited, in substance, that whereas Mason, county treasurer of the County of DeKalb for named years, had in his hands at the expiration of his term of office a given sum of money belonging to the County of DeKalb, and failed to pay the said sum to his successor in office, and fails to account and make settlement therefor, and is now due and owing the said sum to said County of DeKalb, now, therefore, all and singular the sheriffs of said State and their lawful deputies and each of them are commanded that of the goods and chattels, lands and tenements of Mason, county treasurer (for given years) and the securities on his bond, naming them, " you cause to be made the aforesaid sum [naming it]  .  .  and that you have at the office of the board of commissioners of roads and revenues of the County of DeKalb [within a stated time] said sum of money, with this writ with your actings and doings thereon."  These executions were signed by T. J. Flake, as chairman of the board of commissioners of roads and revenues for the County of DeKalb, and I. N. Wilson, clerk of the board of commissioners of roads and revenues for DeKalb County.  That these executions were processes in the name and behalf of the county, and were valid writs, has been established by the principle announced in previous adjudications by this court ; therefore, in sustaining the judgment of the court overruling the motion to quash them, it is deemed only necessary to cite those cases. *Jones* v. *Collier*, 65 *Ga.* 553; *Arthur* v. *Commissioners of Gordon County*, 67 *Ga.* 220; *County of Lee* v. *Walden*, 68 *Ga.* 664; *County of Pulaski* v. *Thompson & Co.*, 83 *Ga.* 270.

These executions being to all intents and purposes processes in the name and behalf of the County of DeKalb, when levies thereof were met by affidavits of illegality, the county was the real party plaintiff in the causes thus arising; and it would have been the better practice for such cases to have been docketed and tried accordingly, instead of being docketed and tried in the names of the commissioners of roads and revenues for DeKalb county.

2. After the report of the auditor had been filed with the court, the commissioners, among others, took an exception of fact to that report, in the following language: "The auditor found that the treasurer had paid on the loan of the Capital City Bank $19,000; whereas the auditor should only have found as paid on the loan of said bank $13,000." This exception of fact was, on motion, stricken by the court, on the ground that it did not plainly and distinctly specify the errors complained of; to which ruling the commissioners excepted. By section 4589 of the Civil Code, with reference to exceptions to auditors' reports, which was codified from the act of December 18, 1894 (Acts 1894, p. 124), it is provided that: "Within twenty days after the report is filed and such notice given, either party may file exceptions, to be separately classified as 'exceptions of law' and 'exceptions of fact.' All exceptions shall clearly and distinctly specify the errors complained of." Whether or not the exception of fact above quoted contained such a clear and distinct specification of the error complained of as to be a substantial compliance with the letter and spirit of the statute, is a question which it is not necessary here to decide, as, upon a careful review of the record and particularly of the brief of evidence, it appears from a statement of the treasurer's account with the Capital City Bank, which was introduced in evidence, that during the time to which this particular exception of fact relates, to wit, from February 1, 1893, to January 17, 1895, the treasurer paid to that bank the following sums: On February 24, 1893, $3,000; on April 4, 1893, $3,000; on January 4, 1894, $900; on January 20, 1894, $1,500; on February 14, 1894, $3,500; on January 4, 1894, $3,000; on February 14, 1894, $2,000; on March 3, 1894,

$2,100: Total, $19,000. And nothing whatever appears in the evidence to controvert the truth of this statement. The finding, therefore, by the auditor, that the treasurer had paid to this bank, during the interval referred to, the sum of $19,000, was, so far as this record shows, demanded by the evidence; and such being the case, even if the court erred in striking the exception of fact, on the ground that it did not meet the requirements of the statute, such error will not warrant this court in sending the cause back, in order that the jury might pass upon the issue made by the exception, when upon that issue no legal conclusion could be reached by the jury other than that reached by the auditor. This court has repeatedly held, with reference to erroneous charges and erroneous rulings on the part of the trial judge, that if the error was harmless, or the verdict was demanded by the evidence, a new trial would not be granted. Such a ruling is applicable here.

3. To the auditor's report, Mason as treasurer, and the sureties on his official bond, as also the board of commissioners, filed certain exceptions of fact. One of Mason's exceptions of fact was as follows: "Defendant excepts to the finding of the auditor that defendant, as treasurer of DeKalb County, had in his hands on February 1st, 1893, the sum of $10,710.48 belonging to said county, for which he has not accounted and made settlement with said county, and that he was, at the time of the issuance of said execution against him, due and owing the sum of $10,710.48 to said county; and says that such finding is error of fact, because the evidence shows, that though defendant had received up to February 1st, 1893, the sum charged against him by said auditor, he had then fully accounted with said county for the same, and did not as said treasurer at that date, or when said fi. fa. was issued, have in his hands as said treasurer any sum whatever belonging to said county." In other cases Mason and the sureties on his bond, respectively, made an exception of fact to the auditor's report, substantially in the language of the exception of Mason above quoted, the only difference being as to the years for which the account was taken and the amount found due. In other cases the board of commissioners made an exception of fact in the following language: "The

auditor found that defendant Mason, treasurer of the County of DeKalb for the years 1893 and 1894, had in his hands on January 17th, 1895, on his ceasing to hold the said office, the sum of $8,615.82 belonging to said County of DeKalb, and that he failed to account therefor and pay the same to said county; whereas the auditor should have found that Mason, as treasurer of the County of DeKalb for the years 1893 and 1894, had in his hands on January 17th, 1895, on his ceasing to hold said office, the sum of $14,615.82 belonging to said county, and that he had failed to account therefor and pay the same to said county, or to his successor in office." All of these exceptions of fact were stricken, on the ground that they did not plainly and distinctly specify the errors complained of; and the parties respectively excepted. The question therefore is, were the exceptions good, under the act of 1894? It will be remembered that the accounting taken by the auditor covered a period of four years. It involved all receipts of money by the treasurer from all sources of county revenue for this period, and also all disbursement made by the treasurer of the public money, for all legitimate county expenses, during the same period of time. In other words, each and every financial transaction of the county covering a period of four years was taken into account. The exceptions were directed to the general result of the auditor's findings; and in order to try the issue raised thereby, a review of the entire evidence (for aught that appears in the exceptions) submitted before the auditor would be necessary. The exceptions in a general way complain that, dealing with a long series of accounts and a vast amount of oral evidence submitted in reference thereto, the auditor in summing up reaches incorrect results. No error of finding with respect to any particular account or item of amount, or with respect to any specified portion of the evidence, is pointed out; but the general result is attacked in a very general way. An imperfection is alleged to exist in the body of the report, but no attempt is made to dissect it and direct attention to the particular location of the imperfection. The entire matter and substance from which the report is made must be gone over, in order to trace the source of and locate the alleged error.

Practically, a trial de novo must be had, in order to arrive at the truth of the issues made by these exceptions.

We do not think that exceptions framed in such general terms conform to the letter and spirit of the statute. Otherwise, the whole purpose of submitting actions of this character to an auditor, viz., the saving of time and expense incurred in the investigation of matters of complicated account by courts through the medium of a jury, would be defeated. Under the law as it stood prior to the passage of the act of 1894, which was set out in our code as follows: "The report of the master or auditor, when returned to court, shall be subject to exceptions for such time as the court may allow; and the exceptions so filed shall be the only issues of fact submitted to a jury, so far as the matters referred to are concerned. When submitted, the jury shall return a verdict on each exception seriatim" (Code of 1882, § 4203), it was held by this court in the case of *Roberts* v. *Summers*, 47 *Ga.* 434, that: "It is not sufficient to except generally to an auditor's report, in matters of account referred to him, as erroneous in the results at which he arrives. The exception should point out wherein the error consists." In the opinion in that case, this court used the following language: "To say that the results at which an auditor arrives in long matters of account are erroneous, without specifying wherein the error consists, is, in effect, to defeat the object of section 4144 of the Code" (of 1868). So also in the case of *White* v. *Reviere*, 57 *Ga.* 386, it was ruled that: "An exception is too general and indefinite which merely alleges error because 'the proof shows that defendant is not indebted to the complainant, but that complainant is indebted to the defendant.'" See also *Arthur* v. *Commissioners of Gordon County*, 67 *Ga.* 220. It is true in the case of *White* v. *Reviere*, 57 *Ga.* 386, supra, it was held that an exception of fact is sufficiently specific when it points out the particular sum which the auditor should have allowed as a credit for "insolvent notes and accounts," instead of the sum which he did allow. So also is an exception which complains that a certain amount should have been debited for "county scrip," and a certain other amount for "notes not appraised"; as is also an exception which complains that the "value of the estate"

was charged at a given sum, when it should have been charged at a certain other sum; and an exception which complains that certain notes should have been credited to the objecting party before certain other notes. The two classes of exceptions, however, dealt with in that case, from their nature, suggest the true distinction between exceptions which are sufficiently definite and specific, and those which are too general and indefinite. The exceptions held good in that case each singled out from the numerous accounts and items particular accounts and items, and made such a specification of error as that the range of evidence upon the issue raised could be directed and confined to such evidence as related directly to the particular accounts and items specified; while, on the other hand, the exception which was held bad went merely to the general result of the auditor's finding, and the range of evidence necessary to a determination of the issue raised by such exception might well have reached to a review of the entire investigation had before the auditor. In view of the provisions of the statute and these authorities, it must be held that the exceptions of fact to the auditor's report last above quoted were bad as being too general and indefinite, and were therefore properly stricken.

·4. It appears that during the years covered by the executions issued against the treasurer, and for which the accounting was taken by the auditor, the treasurer had, by authority of the board of commissioners, borrowed on behalf of the county large sums of money from certain banks and individuals, executing promissory notes therefor and signing the same as treasurer; that during the interval many payments had been made on the loans, and frequent renewals of old loans had taken place and new loans made. At the trial before the auditor, J. A. Mason, treasurer, offered an amendment to the original affidavit of illegality filed by him, in which he averred: (1) " That the plaintiffs during the years 1891 and 1892, the period covered by [one of the] executions, without the consent of two thirds of the qualified voters of said county at an election held for that purpose, incurred new debts as follows: 1891, $13,-385.72; 1892, $23,000.00. Said sums of money were borrowed by plaintiffs in the manner aforesaid, and by them

placed in the hands of affiant as treasurer, to pay out upon and meet the general expenses of said county, and not to supply casual deficiencies of revenue. He alleges that said conduct on the part of plaintiffs was illegal, and rendered void his bond as treasurer of said county for the years 1891 and 1892. (2) The plaintiffs during the years 1891 and 1892, the period covered by said execution, without the assent of two thirds of the qualified voters of said county at an election held for that purpose, incurred new debts in excess of the limits fixed by law, in amounts as follows:  1891, $3,602.75 ;  1892, $11,369-.70 ; placing said sums in the hands of affiant as treasurer of said county for the years 1891 and 1892. He alleges that said conduct on the part of plaintiffs was illegal, and rendered void his bond as treasurer of said county for the years 1891 and 1892." An amendment to his original affidavit of illegality, filed to the levy of the execution issued for the years 1893 and 1894, was also offered by Mason, setting up that the commissioners had during those years incurred new debts without authority of law and in an illegal manner, and placed the proceeds of same in his hands as treasurer to pay out on and meet the general expenses of the county, and not to supply casual deficiencies of revenue, and that, said conduct on the part of plaintiffs being illegal, his bond as treasurer for the years 1893 and 1894 was thereby rendered void. These amended affidavits were rejected by the auditor, he adjudging that "The amended affidavits of illegality are not to be received, because affiant does not swear therein, or in his testimony, that he did not know of such grounds when his original affidavits were filed. If received, the grounds therein contained constitute no defense for him in this proceeding, as he can not attack the validity of the action of the commissioners in obtaining the money placed by them in his hands as county treasurer." Mason filed an exception of law to the auditor's ruling whereby these amended affidavits of illegality were rejected, and also to the "decision of the auditor that the grounds set up in said amended affidavits constituted no defense for him in this proceeding." The trial judge overruled these exceptions of law, and error is assigned thereupon.

By par. 1, sec. 7, art. 7 of the constitution of this State, with reference to debts incurred by counties and cities, it is, among other things, provided that "no such county, municipality, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum of the assessed value of taxable property therein, without the assent of two-thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law." It was conceded by counsel that no election had been held in DeKalb County favoring an increase of the public debt of the county; and the report of the auditor shows that the debts made by the treasurer, by order of the board of commissioners, were incurred without authority of law, and that the action of the board in authorizing the making of such debts was therefore illegal. The treasurer of DeKalb County was an agent of the public, charged with the exercise of certain powers and duties for its benefit. Being such, the principle embodied in section 3012 of the Civil Code, that "An agent can not dispute his principal's title, except in such cases where legal proceedings, at the instance of others, have been commenced against him," is applicable. Having collected money by reason of loans made to the county under authority of the board of commissioners, the treasurer is estopped to question the validity of the authority under which the money was so collected. To rule that the treasurer, after having received the money, could set up the invalidity of the authority by which it was collected, would, in the language of Jackson, Chief Justice, in the case of *Watts* v. *Colquitt*, 66 *Ga.* 492, "seem to outrage all reason and principle, as well as the clear public policy to allow no agent of the public to dispute the legality of the means by which he collects money for the public, or for any citizen virtute officii." This principle is so well supported by reason, and so firmly established by authority, that a further elaboration of the doctrine is deemed unnecessary. *Wilkinson* v. *Bennett*, 56 *Ga.* 290; *Walden* v. *County of Lee*, 60 *Ga.* 296; Placer County *v.* Astin, 8 Cal. 304; Galbraith *v.* State, 10 Lea (Tenn.), 568; Mechem's Pub. Off. § 295; Mechem on Ag. § 526; 24 Am. & Eng. Enc. L. 893; 1 Herman on Estoppel, § 285.

The treasurer, therefore, being estopped to set up the illegality of the transaction by which the money was borrowed, it follows that it is not material whether his special defenses, setting up the facts in reference to the unlawful borrowing of the money, were or were not filed too late, and, consequently, whether the auditor erred in refusing to allow such defenses filed.

5, 6.   To the levy of one of the executions issued against treasurer Mason, on the property of the sureties on his official bond, the sureties filed, respectively, affidavits of illegality, alleging in substance that the execution was issued and was proceeding illegally, because, as was alleged, said Mason did not at the date of the issuance of the execution have in his hands as treasurer of DeKalb County for the years 1893 and 1894 or any preceding year any sum of money belonging to said county which he had failed to account for and pay over to his successor in office, and did not at the date of the issuance of the execution, nor at the date of the filing of the affidavits of illegality, owe any amount whatever to said county as treasurer for the years named.   The sureties also filed amendments to their original affidavits of illegality, in which they alleged that the board of commissioners did in the year 1893 incur a new debt for said county to the Capital City Bank in the sum of $13,000 for borrowed money, and in the year 1894 said board incurred new debts for said county, in the sum of $21,000; that these debts were incurred by the board without the assent of two thirds of the qualified voters of the county, and were not incurred for a temporary loan or loans to supply casual deficiencies of revenue, but to obtain money with which to meet the ordinary and general expenses of the county; that the sums of money realized from these loans were placed by the board in the hands of Mason as treasurer of said county: all of which was done after affiants had become sureties on the bond of said Mason for the years in question, and without the knowledge or consent of affiants; and that thereby said board of commissioners had increased their risks and exposed them to greater liability as such sureties, and by reason thereof discharged them from liability on the bond.   Also, because the commissioners did in the year 1893 incur a new debt for said county to the

Capital City Bank, for borrowed money in the sum of $1,133-
.16 in excess of one fifth of one per centum of the assessed value
of all the taxable property in said county in the year 1893,
and in the year 1894 the commissioners incurred a new debt
to named parties for borrowed money, in the sum of $9,816.16
in excess of one fifth of one per centum of the assessed valua-
tion of all the taxable property in said county in the year 1894;
that said indebtedness for the amounts and years aforesaid was
incurred by the board without the assent of two thirds of the
qualified voters of the county at an election had for that pur-
pose; that said amounts so in excess of one fifth of one per
centum of the assessed value of all the taxable property in said
county for the years 1893 and 1894 were by the board placed
in the hands of Mason as treasurer for those years: all of which
acts were done by the board after the execution of the bond
and without the knowledge or consent of the affiants; and that
such acts on the part of the commissioners were illegal, increased
the risk of the affiants, and exposed them to greater liability as
sureties on the bond of the treasurer, and thereby discharged
them as sureties thereon. Upon the coming in of these affidavits,
the auditor adjudged that, notwithstanding the debts were ille-
gally incurred, the sureties on the official bond were not released
thereby from liability; but on the contrary, found that Mason
and his sureties were severally and jointly liable for the amount
found to be due by Mason. The sureties respectively filed ex-
ceptions of law to this finding of the auditor, and the trial judge
having overruled the exceptions, they assign error thereon.

By section 458 of the Political Code it is provided that:
"All county funds are to be paid to, and disbursed by, the
county treasurer, except such as may be specifically excepted
by law, and then to be collected and disbursed as specifically
directed." By section 460 of that code, the duties of county
treasurers are prescribed. Among those duties, he is required
to diligently collect from all officers and others all county dues;
to keep a well-bound book in which shall be entered all re-
ceipts, stating when received, from whom and on what account,
and all amounts paid out, stating when paid, to whom and on
what account. By subsequent sections of the code the manner

in which the county funds are to be disbursed is pointed out. By the act of December 8, 1886 (Acts 1886, p. 258), a board of commissioners of roads and revenues for the County of De-Kalb was created, and exclusive jurisdiction over county matters vested in that board. Under that act, the duty of raising revenue and providing finances generally for the county, in the manner and under the conditions pointed out and prescribed by law, devolved upon the board of commissioners. No authority was vested in the treasurer to raise such revenues or provide such finances, but his power went no further than to authorize him to collect from "all officers and all others all county dues." The condition of the bond entered into by the sureties was, that said Mason "shall faithfully discharge all the duties of such office of county treasurer of said county, during the time he continues therein, or discharges any of the duties thereof." Unquestionably the condition of this bond would be broken upon the failure of Mason at any time to faithfully discharge all or any of the duties devolving upon him by virtue of his office as treasurer of the County of DeKalb. As such treasurer, it was his duty to faithfully collect from all county officers and all others all county dues, and to faithfully receive and disburse, or account for, all county funds coming into his hands. Under the plain conditions of the bond, the sureties were liable for a failure of the treasurer to pay over or account for the lawful money of the county; but the condition of their bond was not such as to render them liable for the failure of the treasurer to disburse or make settlement for money unlawfully borrowed by the commissioners and placed in the hands of the treasurer as county funds.

The contract of sureties upon an official bond is subject only to the strictest interpretation. They undertake, in the language of Judge Cooley, as used in the case of Detroit Savings Bank *v.* Zeigler, 49 Mich. 157: "for nothing which is not within the letter of their contract. The obligation is *strictissimi juris*, and nothing is to be taken by construction against the obligors. They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent." See also Mechem's Public Off. § 282 and authorities cited. Ac-

cordingly, in the case of Frost *v.* Mixsell, 38 N. J. Eq. 586, it was directly ruled that: "Where the county officers illegally borrowed money for county purposes by giving notes, and this was received by the collector along with the legal funds of the county, his sureties are not liable for a failure to disburse the borrowed money, but are responsible for the failure to pay over the legally received funds." It is true in the cases of Wylie *v.* Gallagher, 46 Pa. St. 205, and Boehmer *v.* County of Schuylkill, Ibid. 452, a contrary view was taken by the court; but we think the better reason, under the condition of the bond here involved, supports the position that the sureties are not liable for the failure of the treasurer to account for the money unlawfully borrowed. The law fixed the boundaries of the treasurer's official conduct. The reception and disbursement of money other than that which legitimately belonged to the county was not an official duty, but was a transaction outside of the functions of the office. There was no duty imposed upon the treasurer to receive or disburse a cent of the money unlawfully borrowed; and it therefore seems clear that while the sureties are responsible for the failure of the treasurer to pay over all lawful money belonging to the county, they are not responsible for the unlawfully borrowed money. Nor was the risk of the sureties increased by reason of the fact that the treasurer undertook to perform an extra-official act in dealing with money which could not legally come into his hands as treasurer. Frost *v.* Mixsell, 38 N. J. Eq. 586. In the present case, with respect to this particular transaction, the treasurer was a mere depositary. His sureties did not undertake that he would not receive any deposits other than county funds. They merely undertook that he should account for all county funds deposited with him, and their liability would be discharged whenever those funds were accounted for.

It appears that during the years 1893 and 1894 there came into the hands of Mason as treasurer $102,529.89, and that during those years he disbursed and otherwise accounted for $93,916.07. Of the amount of receipts with which he is charged, $34,000.00 was realized as the proceeds of loans alleged to have been illegally negotiated by the commissioners. This deducted

from the gross amount of receipts, leaves $68,529.89 of lawful county money. Thus it will appear that the disbursements made by the treasurer exceeded the lawful money of the county which came into his hands. If, therefore, the money, or any portion of it, remaining in the hands of the treasurer or unaccounted for was lawful money of the county, the sureties would be liable to that extent. If, on the other hand, the treasurer had paid out or accounted for all the lawful money of the county which came into his hands, the sureties would not be liable for his failure to account for the unlawful money. Prima facie, the execution issued by the commissioners is to be taken as expressing and representing a real debt for the county funds, and ordinarily it is not for the county to support it by evidence, but for the defendant or defendants to meet and overcome it by evidence. The trial, under the affidavit of illegality, is accorded, not to give efficacy to the execution, but to allow opportunity for showing it invalid or inoperative in whole or in part. *Bridges* v. *Dooly County*, 83 *Ga.* 275. But under the peculiar facts of the present case, a different rule should apply. The county authorities were responsible for the mixing of the lawful money of the county with that unlawfully obtained. It was by their act that the legitimate deposits of the county became confounded with others for which the sureties were in nowise liable ; and they therefore should carry the burden of separating these deposits and showing that the amount claimed to be due by the treasurer represented lawful money of the county which he had failed to disburse or otherwise lawfully account for. See *Claflin & Co.* v. *Continental Jersey Works*, 85 *Ga.* 27. Direction is therefore given, that the question of the sureties' liability be again referred to the auditor, with instructions to make another report thereon after further investigation in the light of what is above laid down as the law applicable ; the auditor in conducting such investigation to take into consideration the evidence heretofore submitted to him, and such other pertinent evidence as may be introduced by any party at interest.

*Judgments in part affirmed ; and in part reversed, with direction. All the Justices concurring, except Cobb, J., absent.*