## 1171. BOARD OF EDUCATION OF MILLER COUNTY
### *v.* FUDGE *et al.*
## 1183. WILLIAMS *v.* BOARD OF EDUCATION OF MILLER COUNTY.

1. Funds derived by county boards of education from borrowing money are not included in county school funds, and the proper receipt and disbursement of such borrowed money is not one of the duties of a county school commissioner by virtue of his office.

(*a*) A contract of suretyship is to be strictly construed in the interest of the surety. The risk of a surety on a county school commissioner's bond may be increased by his being entrusted by the county board of education with large sums of money to be disbursed under its orders, which moneys were not received as part of the common-school fund, nor at the times provided by law for the payment of such fund.

(*b*) Sureties upon the bond of a county school commissioner are not liable, upon a bond providing for the faithful discharge of his duties, for any moneys borrowed by such county board of education. In the case of loans to county boards of education the entire transaction is individual, and not official.

2. In a case where an action can not be maintained against the sureties on an official bond, because the malfeasance or dereliction of duty of their principal is personal, and not official, neither can the action be maintained upon the contract as against the principal, though he may, in an action of a different nature, be individually liable.

3. The power to make arrangements for the efficient operation of schools, conveyed by § 1363 of the Political Code, does not include the power to borrow money.

Action on bond, from city court of Miller county—Judge Bush. February 27, 1908.

Submitted July 14,—Decided July 31, 1908.

*Bush & Stapleton, Russell & Hawes,* for plaintiff.

*Pottle & Glessner, Perry D. Rich, R. W. Grow,* for defendants.

RUSSELL, J.   The writs of error in these two cases will be considered together, for the reason that the questions in each arise upon the consideration of the same petition.   The county board of education of Miller county brought suit against the county school commissioner and the sureties on his official bond, for an alleged misappropriation of school funds.   The material portions of the petition allege, that Williams, being elected as county school commissioner, executed a bond for the faithful discharge of all and singular the duties required of him by virtue of his office as county school commissioner, with Phillips, Fudge, and Ball as securities.   The bond upon which the suit was based was for the sum of $4,000, payable to the county board of education and their successors in office.   The condition of the bond is in the following language:   "Whereas, the above bound J. R. Williams was, on the 6th day of February, 1904, elected county school commissioner of Miller county for the years 1904, 1905, 1906, and 1907, and during the term pointed out by law, the condition of the above obligation is such that if the said J. R. Williams shall faithfully discharge all and singular the duties required of him by virtue of his said office as aforesaid, during the ·term he continues therein or discharges any of the duties thereof, then the above obligation to be void, otherwise to remain in full force and virtue."   The petition further alleges, that during the year 1905, ·$3,835.50 was paid to the county school commissioner, of which ·$1,935.50 was paid in checks from the State school commissioner, and $1,900 in cash, borrowed by the county board of education from the First National Bank of Colquitt, it being alleged that all of this money was for school purposes,—was part of the school fund of the county, and was accepted by Williams as part of the school fund of the county.   In the 7th paragraph of the petition it is further alleged, "that at the time the said board of education of Miller county borrowed the $1,900 from the First National Bank of Colquitt, same being the money borrowed and referred ·to in paragraph 5 of this petition, there was then due Miller

county from the State of Georgia, from the school fund, the sum of $3,137.74; and said money borrowed from the First National Bank of Colquitt by your petitioner was borrowed to take the place of money that had been appropriated to Miller county for school purposes, but which had not been delivered to said county by the State of Georgia; that said amount was to be delivered, and was a definite and a certain and settled sum, and the money borrowed was secured by your petitioner as an advance on the amount due and unpaid by the State of Georgia." The petition then proceeds to say that the principal, Williams, has accounted for only $2,913.35 of the above-stated amount, leaving a balance of $929.15; for which demand is alleged to have been made, which the county school commissioner has failed and refused to deliver and account for. Upon the foregoing statement of facts a breach of the bond is alleged, and the liability of the principal and the sureties, for the sum of $929.15, is asserted. To this petition the sureties demurred, and Williams orally moved to dismiss the same, upon the ground that it set forth no cause of action.

We think the lower court properly sustained the demurrer interposed by the sureties, and erred in not dismissing the action as to the principal. In our opinion the petition set forth no cause of action on the bond sued upon, either against the principal or the sureties. It may be that the county school commissioner is liable to the board of education, if he received any money as their agent and misappropriated it; but, under the allegations of the petition, he is not liable upon this contract, any more than his sureties upon the bond. The only obligation in the bond is that J. R. Williams "shall faithfully discharge all and singular the duties required of him by virtue of his said office;" and the period for which he is bound to perform these duties, as we construe the meaning of the bond, is during the term he continues therein or during which he discharges any of the duties thereof. We can not agree with the contention of the counsel that the bond was void if Williams discharged "any of the duties thereof." These words naturally refer back to the words "during the term." The obligation of obligors on a bond is to be strictly construed, and we have no hesitation in holding that the bond bound Williams and his sureties to discharge only "all the duties required of him by virtue of his office."

We come, then, to the inquiry, in the first place, what are the duties required of a county school commissioner by his office, so far as the matters alleged in this petition are concerned? The duties of a county school commissioner are varied in their nature. Some involve the care and expenditure of money, and others do not concern matters of finance. The county school commissioner is the custodian and the disbursing agent of the common-school fund in his county. He has a duty in reference to these funds, which is included in the duties mentioned in this bond. But the common-school fund is expressly defined in our code. Political Code, § 1384. Money borrowed by the county board of education is not included within the terms of § 1384, and, therefore, the county school commissioner, as such, has no duty devolving upon him, either as to the safe-keeping or proper disbursement of money borrowed by the county board of education. The county board of education has no right to borrow money. Paragraph 1 of section 7, article 8 of the constitution of the State, which is cited by counsel, has no possible application to a county board of education. Its meaning can not be extended beyond its terms. The county board of education can not incur a new debt which is temporary, or settle a casual deficiency, under the provisions of this clause of the constitution, because the board of education is neither a county nor a municipality, nor a political division of the State.

In *Mason* v. *Commissioners,* 104 *Ga.* 35 (30 S. E. 513), the sureties on the bond were held free from liability for borrowed money which had been turned over to the county treasurer. Certainly if, under the facts of that case, as well as those in *Hall* v. *Greene County,* 119 *Ga.* 254 (46 S. E. 69), it could be held that the sureties and the county treasurer were not liable for money borrowed by a *county,* there should be no difficulty in holding that the sureties and the county school commissioner are not liable for money placed in the county school commissioner's hands, which has been borrowed, not by the county or county commissioners, but by a board of education. The borrowing by these members of the county board of education was simply an individual undertaking, and the money obtained was money for the payment of which they were individually liable, and which they individually turned over to the county school commissioner as an individual

and as their agent. Not only did the placing of these private funds in the hands of Williams tend to increase the risk of the sureties on his bond, for the reason that the sureties naturally based their liability on the amounts only which it was presumed would be received quarterly from the State, and not upon other amounts which might be borrowed and thereby increase the amount of money handled by the county school commissioner, but they did not assume and perhaps would have declined to assume liability for Williams' disbursements, except those stipulated in the bond. The obligation in the bond to discharge all the duties of the office of county school commissioner was the only obligation the sureties assumed. Williams' duties as county school commissioner were all that were in contemplation of the parties. The liability of sureties is always one of strict law. Sureties can not be held bound unless the law is strictly complied with. So far as the liability of the sureties for public money in the hands of the county school commissioner was concerned, the sureties had the right to expect that Williams would not have in his possession anything but the common-school fund of the county, made up from the sources provided by law. Legally stated, they knew that this money was turned over to Williams, under the statute, quarterly, and in comparatively small amounts. It would not be paid until the county board already owed it and the commissioner would have to disburse it almost immediately. Under the operation of the law, the money to be sent by the State school commissioner hardly has time to reach the county school commissioner before it must be disbursed; and under the allegations of this very petition, it appears that all the money that was sent by the State school commissioner was properly disbursed by the county commissioner. We have no hesitation, therefore, in holding that the demurrer, on the part of the sureties, was properly sustained, for to hold otherwise would be to create a liability not contemplated by the contract, judged by its express terms, as well as to cause these sureties to incur a risk greater than they assumed.

The reasons which have controlled our judgment as to the sureties impel us to hold that the court should have also dismissed the action as to the principal on the bond. We do not mean to say that if the allegations of the petition are true, Williams, as an

individual, may not be liable in a proper action for money had and received, but we do hold that, under the allegations of the petition, the money which he is alleged not to have accounted for he did not and could not receive as county school commissioner; that his bond is merely for the faithful discharge of the duties of his office, and that as the petition alleges that he has accounted for more than the amount received as county school commissioner, failure to account for a balance of money borrowed by the members of the county board may be private malfeasance, but can not be a breach of official duty.

Counsel for the county board of education insist that, having received money by reason of a loan made to a county board, the treasurer, upon the principle announced in *Mason* v. *Commissioners,* supra, was estopped to question the validity of the authority under which the money was so collected and received. The decision in the *Mason* case rests upon its own particular facts. Importance was attached in that case to the fact that Mason assisted in borrowing a large portion of the money himself, signing the notes officially as county treasurer. Whether the principle laid down in *Mason's* case is sound or not, there are two great differences between the facts in that case and in this. In the first place, county commissioners of a county have broader powers for borrowing money than a county board of education; and it does not appear, in the next place, that Williams signed any of the notes for the money borrowed in this case. The motion to dismiss was well taken, however, regardless of the principle announced in the *Mason* case, because even though Williams should be estopped to challenge the validity of the loan, he is not estopped to say that he is not liable on the contract sued on, for the reason that, in the particular obligation which is the basis of the suit, he did not undertake to receive or disburse any money other than that which came within the province of his duty as county school commissioner.

Counsel for the county board of education insist that the borrowing of money to pay teachers is authorized by section 1363 of the Political Code. The language relied upon is that portion of the section which gives county boards of education power to make all arrangements necessary to the efficient operation of the schools. The spirit and language of our constitution is such that unlim-

ited power to borrow money can not be inferred from this language. If the legislature had power to authorize county boards of education, in their discretion, to create indebtedness, they would doubtless have exercised this power in express terms, and not place it simply in connection with other arrangements, which do not call for the raising of funds, but pertain solely to the expenditure of money for such things as are necessary in the conduct of schools,— "maps, globes, and school furniture."

*Judgment in 1171 affirmed, in 1183 reversed.   Powell, J., disqualified.*