J. E. DENT *et al.*, plaintiffs in error, *vs.* J. H. COOK, Ordinary, *et al.*, defendants in error.

(BY TWO JUDGES.)—The Ordinary of a county has no authority under any general law of this State, even with the recommendation of the grand jury of the county, to borrow money on the credit of the county, and if, for this purpose he issue county bonds, and sell them, the county is not liable on the bonds so issued.

2. On a proper case made by bill, in the name of the citizens of the county—tax-payers—it is the duty of the Judge of the Superior Court, as Chancellor, to restrain, until the hearing on the merits, an Ordinary from ordering such bonds to be paid by the treasurer of the county: *Provided,* the injunction be so framed as not to interfere with the rights of bondholders who are not parties to the bill, to the use of every remedy allowed by law, through the Courts of law and equity, to test and enforce any claims they may set up against the county in the premises. 20th February, 1872.

County Matters. Ordinary's Powers. Tried before Judge WRIGHT. Coweta county. Chambers. November, 1871.

Dent and others filed a bill against Cook, making the following averments: They are citizens of Coweta county and tax-payers therein ; Cook is its Ordinary ; as such he made a contract with one Hackney to build a jail in said county, which Hackney did, and Cook paid him partly with funds in the County Treasurer's hands, and then, as Ordinary, issued bonds of the county and sold them at a discount, and thus obtained enough money to pay off the balance of the debt. He paid off Hackney, and himself used the balance, claiming that the county owed him. He then levied an extra tax to pay said bonds, some of which were near maturity. They contended that he had no right to issue such bonds, that the county was not bound by them, and asked the Chancellor to enjoin the payment of them by Cook or the treasurer. The bill made various charges of wrong in the contracting of said debt and in the expenditure of the money. But neither these nor the reply to them are necessary, as the case turned here upon the question of authority in the Ordinary so to bind the county. Cook showed that the jail of said county had burned down, and that the grand jury recommended that the "Ordinary proceed to have a good and sufficient jail-house erected in this county, and make arrangements for the same by issuing county bonds, running to maturity in one, two and three years." And he issued said bonds under said recommendation, and contended that he acted thereon within his lawful authority. The Chancellor refused the injunction, and that is assigned as error.

S. FREEMAN; L. H. FEATHERSTON; J. B. S. DAVIS and HUGH BUCHANAN, for plaintiffs in error.

DOUGLASS & WRIGHT, for defendant.

Dent *et al. vs.* Cook *et al.*

McCAY, Judge.

1. The question presented in this record is a very grave one.   If the Ordinaries of the several counties of this State have the power to borrow money and negotiate bonds for that purpose, there is a serious defect in our law.   Such a power entrusted to the discretion of one man, is so liable to abuse, so dangerous to the public interest, and so little needed for the proper purposes of a county organization, that if it does in fact exist, the law ought to be forthwith repealed. But we do not think such a power exists.   The Ordinary, it is true, is clothed by the Constitution of 1868 with the powers of the Inferior Court, and the management of county affairs is in his hands.   Constitution, Article 5, section 5, paragraph 2, and Article 12, section 7.

But the powers of the Inferior Court are specially pointed out by law:   Code, sections 346, 347, 4057, 529, 530, 531, 536; and as well from the nature of the thing as by the positive provisions of the statute, they had no powers, except such as were specially granted.   Indeed, section 4057 of the Code, in declaring the jurisdiction of the Inferior Court for county purposes, seems to have been designed for the specific purpose of announcing that to be the rule.   It is in these words:   " Said Court may have and determine all matters over which the *law gives the justices jurisdiction.*"

If they have a power or a jurisdiction, it must be one declared by law.   There is no reserved, general power in that tribunal.   It must have a grant for every power it claims. It is not pretended that there is any special grant of the power to borrow money.   It may, it is true, make contracts. But a close inspection of the provisions of the Code will show that all the contracts it may make, must be in reference to the specific things it is made their duty to supervise.

In section 346 it is said:   " They may direct and control the property of the county, as they deem expedient, *according to law.*   They may lay general and specific taxes, *according*

to the *provisions of the Code,"* etc., etc. The county, it is true, is a corporation. Code, section 825. But this is only for certain specific purposes. This section of the Code is not even to be understood as putting counties on a footing of ordinary municipal corporations, such as cities and towns. They are created, and have special duties and special privileges, regulated by the charter of each, are sought for, and their charters may be forfeited, or lost by non-user and the judgments of Courts. But the counties are subdivisions of the State, imposed upon the people for State purposes. They are, in fact, but *quasi* corporations, and this section of the Code is not to be understood as conferring any powers, except the right to sue and be sued, since the other powers are all conferred and regulated by other statutes and provisions of the Code. Indeed, the Act of 1863-4 calls them corporations, or *quasi*-corporations.

It may be noted, too, that there is no provisions confering on the Inferior Court, or Ordinary, the functions of managers of the counties. Indeed, all the powers of the county, as well as all the powers of the Ordinary, are specially defined and regulated by law. The Ordinary is a State officer, commissioned by the Governor, and his duties are pointed out by the general law.

It may also be said that the various special Acts of the Legislature, of which the pamphlets containing the laws are full, authorizing the counties to borrow money for special purposes, is a strong indication of the opinion of the Legislature, as well as of the opinion of intelligent county officers. An Ordinary has power to make all contracts, necessary and proper, to perform the duties cast upon him. He can build Court-houses, jails, etc., and he may make contracts for that purpose, and contract a debt for that purpose. But the raising of money to pay that debt is pointed out by law, to-wit, by taxation, in the method prescribed.

It is inconceivable that the Legislature ever contemplated that the old Inferior Court could borrow money to carry on

its county affairs.    Some provision, some mode of exercising
the power, would have been prescribed.    If the power exists,
it is at the discretion of the Ordinary.    He determines on the
propriety of borrowing.    He negotiates for the money, issues
the bonds, executes them, receives the money, and expends it.
He is, in no place in the Code, clothed with such powers.
Great care is taken to elaborate checks and counter-checks
against county officers.    But here is one with power to get as
much money as he pleases, and use it as he pleases.    We
do not think such a power exists.

We do not say that if the Ordinary has expended, for the
public use, the money of any citizen, that the county is not
liable for the money.    We simply say that the Ordinary has
no power to borrow money, and to bind the county by *con-
tract* to repay it.

We recognize the right of any citizen, however, to compel
the county to pay any money of his that has gone to its use.
And whilst we think this injunction ought to have been
granted, as prayed for; to-wit: to prevent the Ordinary, by
his mere ordinary order on the treasurer, from paying these
bonds; yet, we do not intend, in any way, to interfere with
any use by the creditor of any process or proceeding, to bring
his claims against the county, whatever they may be, before
the proper Court for adjudication.

Judgment reversed.