HALL *v.* COUNTY OF GREENE.

A county treasurer is not entitled to commissions for receiving and repaying money borrowed by the county to meet ordinary current expenses.

Argued November 26, — Decided December 12, 1903.

Exceptions to auditor's report.    Before Judge Holden.    Greene superior court.    July 22, 1903.

*James Davison,* for plaintiff in error.
*James B. Park* and *Samuel H. Sibley,* contra.

CANDLER, J.    This case arose upon the trial of an affidavit of illegality, filed in Greene superior court by Hall, formerly treasurer of Greene county, to arrest the levy of a fi. fa. against him, issued by the county commissioners and based on an alleged indebtedness by Hall to the county in his official capacity as treasurer.    The case was referred to an auditor, who found, on an agreed statement of facts, that Hall was indebted to the county in the sum of $332.83.    Both the plaintiff and the defendant filed exceptions to the auditor's report, but at the hearing the presiding judge overruled all the exceptions and sustained the report in full.    Hall excepted.    Under the agreed statement of facts, the sole question presented for our determination is, was the county treasurer entitled to commissions for receiving and paying out money borrowed by the county commissioners to pay court

and jail expenses, expenses of working a chain-gang on the public roads, and other current expenses, the money having been borrowed "to be repaid within less than one year, from the tax of each year, and the borrowed money each year [being] less than the tax for such years"? The auditor found, in effect, that the purpose for which the money was borrowed was not to meet casual deficiencies in the revenues of the county, and that the treasurer was therefore not entitled to the commissions claimed. The meaning of the expression "casual deficiencies" is no longer open to question in this State. In the case of *Lewis* v. *Lofley,* 92 *Ga.* 804, the present Chief Justice, speaking for this court, said: "We can not conceive how a debt incurred for the building of a court-house can be regarded as a debt incurred 'to supply casual deficiencies of revenue.' The word 'casual' means that which happens by accident or is brought about by an unknown cause; and we think the framers of the constitution, in using this language, meant some unforeseen or unexpected deficiency, or an insufficiency of funds to meet some unforeseen and necessary expense." This case has been frequently referred to, and this court has consistently adhered to the doctrine there laid down. In the case of *Commissioners of Habersham County* v. *Porter Mfg. Co.,* 103 *Ga.* 614, the ruling was, upon a request for a review, expressly reaffirmed. It was also discussed in the cases of *City of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 703, and *Dyer* v. *Erwin,* 106 *Ga.* 848, and, as before stated, the ruling made has never been overruled.

There is no authority whatever in our law authorizing county authorities to make any such loans as the one disclosed by this record. The treasurer was not bound to receive any moneys obtained in this way; and if he did, and the funds had been misappropriated by him, the securities on his bond would not have been liable therefor. Having received and paid them out, however, he would be accountable for them, although no liability would arise against his sureties. *Mason* v. *Commissioners,* 104 *Ga.* 35. In the present case the treasurer did receive the borrowed money. He paid it but for the current expenses of the county, and at the end of the year, when the taxes came in, paid off the loans; but in handling the money derived from the loans he was not handling county funds, within the meaning of the Political Code,

§ 458.  If he had taken commissions out of the borrowed money at the time it was turned over to him, the loss would have been that of the lenders, and not the county.  Parties loaning money to counties for purposes such as the ones for which the money in the present case was loaned can not collect back any part of it which does not go to its proper use.  The treasurer here did not attempt to retain his commissions at the time of receiving the borrowed money or at the time of paying it back, but sought to take it out of the regular county funds at the time of turning over his office to his successor.  In *Wood* v *Commissioners*, 60 *Ga.* 566, it was held:  "On money borrowed without authority of law, whether by the ordinary, the county commissioners, or the county treasurer, no commissions can be retained by the county treasurer out of the county funds; but retaining commissions out of such borrowed money affects the lenders, and not the county, as the county, in the absence of a statute to authorize borrowing, is not bound for any borrowed money which is not applied to its use. If the treasurer has used county funds proper, either to compensate himself for handling money illegally borrowed, or to repay the lenders beyond the sums actually expended for the benefit of the county, he is liable for any deficit thus occasioned."  It was not the intention of the General Assembly, in fixing the compensation of county treasurers, to have the public moneys pay toll more than twice.  To permit the treasurer to take out 2 1/2% on $1,000 borrowed to pay current expenses of the county, as commissions on money received, another 2 1/2% as the $1,000 is expended, another 2 1/2% as the taxes come in from the public, with which the loan is repaid, and still another 2 1/2% when the $1,000 is repaid to the lender, would be to tax the same fund four times with payment of commissions, when it is plainly the intention of the law that he should receive commissions only twice, — when the money, the lawful income of the county, is received and when it is paid out.

*Judgment affirmed.  All the Justices concur.*