BUTTS COUNTY. *et al. v.* JACKSON BANKING CO. *et al.*

1. The general fiscal policy outlined in the constitution of 1877 for political subdivisions, such as counties and municipalities, was to provide a system of finance for subordinate public corporations, under which there could be made each year contracts for the expenses of the year, and these were to be paid out of moneys arising from taxes levied during the year. A liability for a legitimate current expense may be incurred, provided there is, at the time of. incurring the liability, a sufficient sum in the treasury of the county or municipality which may be lawfully used to pay the liability incurred, or if a sufficient sum to discharge the liability can be raised by taxation during the current year.

2. County commissioners have no authority to contract in behalf of a county for a loan of money (not to supply a casual deficiency of revenue) to be used in defraying current expenses, although the notes which evidence the loan be payable within the current year, and the general design be to discharge them from the anticipated revenue of that year.

3. An action for money had and received may be maintained by one who has loaned money to a county, and which has been used by it to discharge a legally incurred liability for a current expense, although the governing official or officials of a county have no authority to borrow the money or to give a note therefor.

4. Where a county incurs a lawful liability for a current expense, and issues its warrant on the treasury for its payment, and subsequently procures another to pay the same out of a loan which he makes to the county, upon disaffirmance of the illegal loan by the county the lender is subrogated to the rights of the warrant holder whose warrant was paid out of the proceeds of the illegal loan.

5. Where warrants for current expenses, which have been paid by another from the proceeds of a loan which he made to the county (to the rights of the several holders of which warrants such person has become subro-

gated), and other warrants issued by the county commissioners, aggregate a sum larger than that which the county has in its treasury, raised from the revenues of the year in which the various liabilities were incurred, payment must be made in accordance with the rules prescribed. in the Political Code. When the legality of some of the warrants contending for payment is in issue, equity will restrain the treasurer from disbursing the county funds in his hands until it may be judicially determined to which warrants, and in what proportions, the fund shall be distributed.

Argued June 25, 1907.—Decided January 30, 1908.

Injunction. Before Judge Pendleton. Butts superior court. May 21, 1907.

This was a petition by the Jackson Banking Company, a corporation, against Butts County, the county commissioners, and the treasurer of the county, for injunction and other relief. In the petition it was alleged, that the Jackson Banking Company (hereafter called the bank) loaned to the county, at different dates between February and October, 1906, certain sums of money, and these loans were evidenced by notes, copies of which were set out. The money was borrowed for the purpose of providing present funds for the immediate payment of county warrants, in anticipation of taxes which could be legally levied; it being the agreement between the county and the bank that the notes were to evidence the sums advanced by the bank during the current year, and they were made payable at times when it was anticipated the taxes would be in the treasury. The money so advanced upon these notes was placed to the credit of the county on the bank's books. It was agreed that the money was to be actually paid by the bank to the holders of the county warrants, and pursuant to the agreement the bank paid the money to the warrant-holders and stamped the warrants paid. A list of the warrants was attached to the petition. In a few instances some money was paid upon the check of the treasurer, these checks actually representing the amounts of warrants turned over to the treasurer; and the treasurer having no funds to meet the checks, they were used in lieu of the warrants. It was agreed that the county would levy a sufficient tax to cover the amounts so actually advanced to defray legitimate expenses of the county. It was alleged that the present board of commissioners denied liability on the notes and refused to reimburse the bank for the money paid by it to warrant-holders; that the fund in the hands of the treas-

urer was derived from taxes levied for the year 1906, and was suffi-
cient to pay the bank for the moneys expended for the county's
benefit; that the commissioners had issued other warrants on this
fund to pay claims of inferior dignity to the bank's claim, and that
the funds in the, treasury were insufficient to pay the demands of
the bank and other warrant-holders.  The prayers were, for judg-
ment on the notes, but, if the contract of loan be declared illegal,
that the bank be decreed the owner of the warrants which it paid,
and be subrogated to all the rights of the several warrant-holders;
for mandamus; and for injunction to restrain the disbursement of
the fund in the treasury to warrants of inferior dignity, and to re-
strain the payment of any warrant so as to reduce the funds below
the bank's claim.  The court passed an order calling on the de-
fendants to show cause why the writ of injunction should not issue,
and granted an ad interim restraining order.  The defendants
showed cause by way of demurrer and answer, wherein the liability
of the county was denied.  On the interlocutory hearing an injunc-
tion was granted, and the present bill of exceptions is taken to
this judgment.

*Joseph B. Wall* and *Rosser & Brandon*, for plaintiffs in error.

*E. M. Smith, Olin J. Wimberly*, and *J. D. Kilpatrick*, contra.

EVANS, P. J.  1, 2.  The liability of the county on the notes is
predicated on the theory that the governing officials of a county,
in the county's behalf, might lawfully contract for a loan of money
to be used in defraying current expenses in anticipation of the col-
lection of the annual county taxes.  Is this financial policy forbid-
den by the fundamental or statute law of this State?  Article 7,
paragraph 7, section 1, of the constitution is as follows:  "The
debt hereafter incurred by any county, municipal corporation, or
political division of this State, except as in this constitution pro-
vided for, shall not exceed seven per centum of the assessed value
of all the taxable property therein, and no such county, municipality,
or division shall incur any new debt, except for a temporary loan
or loans to supply casual deficiencies of revenue, not to exceed one
fifth of one per centum of the assessed value of taxable property
therein, without the assent of two thirds of the qualified voters
thereof, at an election for that purpose, to be held as may be pre-
scribed by law; but any city, the debt of which does not exceed
seven per centum of the assessed value of the taxable property at

the time of the adoption of this constitution, may be authorized by law to increase, at any time, the amount of said debt, three per centum upon such assessed valuation." In the well-considered case of *City Council of Dawson* v. *Waterworks Co.,* 106 *Ga.* 713 (32 S. E. 907), this court laid down the following comprehensive definition of the word "debt" as used in this paragraph of the constitution: "Taking into consideration all of the provisions of the constitution which deal with this subject of debts to be incurred by the public, and taking into consideration the matters of public history above referred to, we are brought to these conclusions as to what was the intention of the framers of the constitution in the matter of debts to be incurred by municipal corporations: (1) The word 'debt' is not to be construed in its broad and unrestricted sense, of a liability by one person to pay money or other thing of value to another. (2) A liability for a current expense can be incurred by a municipal corporation for any one year, provided there is, at the time of incurring the liability, a sufficient sum in the treasury of the city which may lawfully be appropriated to the payment of the liability incurred, or if a sufficient sum to discharge the liability can be raised by taxation during the current year; and such a transaction would not create a debt within the meaning of that word as it is used in the constitution. (3) It was the purpose of the constitution to provide a system of finance for subordinate public corporations, under which there should be each year contracts made for the expenses of the year, and these were to be paid out of moneys arising from taxes levied during the year, that is, that each year's expense should be paid by taxes levied during the year, and no item of expense was to be paid except out of the taxes levied during the year in which the contract for such expense was made. (4) Any liability which was not to be discharged by money already in the treasury, or by taxes to be levied during the year in which the contract under which the liability arose was made, is a debt within the meaning of the constitution, and can not be incurred without the preliminary sanction of a popular vote, unless it be for a temporary loan to supply casual deficiencies of revenue." The fiscal policy of counties prescribed and enjoined by the constitution is that all lawful liabilities must be paid out of the revenues raised for the year in which the liabilities are incurred. No departure from this plain and express course is allowable except in the two

instances specified, viz.: in cases of loans to supply a casual deficiency of revenue, and in cases of debts created by authority of a previous plebiscite vote. This system of finance is entirely opposed to the ruinous policy of postponing the legitimate burdens of the present to the care of posterity. The creation of a liability causes little concern if its payment may be deferred for generations yet to come. But when public officials charged with the administration of the county's affairs are confronted with the proposition that they must annually levy a tax to meet every item of expense of the current year, they are likely to be less extravagant and prodigal in incurring liabilities.

The plain and obvious import of the words employed in this provision, according to their common understanding, is that a county, without a preliminary vote of sanction, should never be permitted to borrow money except to supply a casual deficiency in revenue. Not only is this the plain significance of the words in this clause, but a reference to the proceedings of the constitutional convention discloses that the framers of the constitution intended such a construction. One of the aids in constitutional construction is an examination of the proceedings of the constitutional convention. It is admitted that ordinarily not much assistance may be derived from such examination, since the proceedings may not clearly point out the purpose of the particular provision; and besides, the constitution obtains its force from the people, and not the convention. Cooley's Const. L. (3d ed.) 389. But where the proceedings show the positive and unmistakable intent of the framers of the instrument that the particular phraseology shall not be extended beyond its plain meaning, corroborative force is given to the conclusion that the people acted on this construction, and ratified the instrument in the belief that the words were used in a sense obvious to the common understanding. When this paragraph was reached in the report of the committee on final revision, it contained an exception allowing an increase of indebtedness to an amount not exceeding two per centum upon the assessed value of the taxable property, but these words were stricken, and in their stead were inserted the words, "except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per cent." Journal Const. Con. 315. This is an emphatic declaration that it was never contemplated that county or

municipal officials should ever borrow money without the sanction of a plebiscite vote, except in one instance only, viz.: to supply a casual deficiency of revenue. While it is permissible, under the interpretation of the *Dawson Waterworks* case, for a county with an empty treasury to incur a liability for a current expense, to be discharged from the funds raised by taxation during the current year, and yet not create a debt, it does not follow that a contract for the loan of money to pay such liability is not a debt in the meaning of the constitution. There is a fundamental difference between incurring a liability to one person, and borrowing money from another to pay it. As is said in 2 Daniel's Neg. Inst. (5th ed.) §1530, "It may be convenient to do so, but it can not be necessary. . . In the one case the application of the credit is secured to the advancement of an authorized object, while the money borrowed is liable to be lost, to be squandered, or to be diverted to illegitimate purposes." The power to raise money by taxation to meet current expenses does not imply a power to borrow money for that purpose. *Denl* v. *Cook*, 45 *Ga.* 326; *Wood* v. *Comm'rs of Greene Co.*, 60 *Ga.* 556.

Public officials are special agents with limited powers. When it is sought to bind a county by the undertaking of its officials, its liability on the contract must be founded on the authority of the official to make it. The official or officials in charge of the county's affairs have authority to repair a bridge on the public highway. They may lawfully contract to have it done. They have authority to issue a warrant to the contractor on the county treasury for the amount of the repairs, and they have authority to levy a tax sufficient to supply the treasury with the necessary funds with which to pay the warrant. It was never contemplated by our organic law that current expenses were to be met with borrowed money, and that the county authorities might go into the market from time to time and negotiate loans and borrow money to supply the till of the county treasury, except in the case of a casual deficiency. Such a scheme is wholly at variance with the inhibitory provision against creating debts. The constitutional scheme of defraying current expenses by taxation excludes the idea of paying them in any other way. Wells *v.* Salina (N. Y.), 23 N. E. 871. Moreover, a county is a political subdivision of the State; a unit of territory in which local self-government obtains. The power of taxation is

intended to supply the necessary funds, and the county must look to this source until power to borrow money is conferred. Mayor v. Ray, 19 Wall. 468; 11 Cyc. 502; 7 Am. & Eng. Enc. L. (2d ed.) 932; Town of Hackettstown v. Swalkhammer, 37 N. J. L. 191. It does not matter that the loan is contracted to be paid in the current year, and was made with the distinct understanding that it was to be paid from the anticipated revenues of that year. It is the nature and not the form of transaction which the constitution condemns. The county is prohibited from borrowing money to pay current expenses; the form of the contract can not override the fundamental law. *Hall* v. *County of Greene,* 119 *Ga.* 253.

In all the cases considered by this court since the adoption of the constitution of 1877, the borrowing of money by counties (not to supply a casual deficiency of revenue) has been treated as forbidden by the constitution. *Mason* v. *Comm'rs of DeKalb County,* 104 *Ga.* 35; *Hall* v. *Greene,* 119 *Ga.* 253; *Town of Wadley* v. *Lancaster,* 124 *Ga.* 354. We therefore think that the contract of loan, in pursuance of which the notes to the defendant in error were executed, is violative of article 7, section 7, paragraph 1, of the constitution, and that the notes are not enforceable against the county.

3, 4. Counsel for plaintiffs in error contend that the illegality of the notes pervades the whole transaction, and bars a recovery of the money, even though beneficially applied to a lawful purpose. To this contention we can not give our assent. It is very generally held that counties and municipal corporations are liable for money had and received by them and applied beneficially to their authorized objects, although the contract by which the money was obtained was unauthorized by law. Allen v. LaFayette, 89 Ala. 641; Salt Lake City v. Hollister, 118 U. S. 256; Parkersburg v. Brown, 106 U. S. 487; Dill. Mun. Cor. §126; 20 Am. & Eng. Enc. L. (2d ed.) 1158; Luther v. Wheeler, 73 S. C. 83. The principle of liability rests upon the theory that the obligation implied by the law to pay does not originate in the unlawful contract, but arises from considerations outside of it. In ascertaining the quantum of liability the amount of the loan is not taken into account, but the measure of recovery is the money actually applied to lawful municipal or county uses. The obligation to account for money received by the county, and actually devoted to lawful purposes, rests upon the

broad principle of common honesty, which will not permit the
county to retain the benefit of money lawfully applied to its use,
and at its request, simply because the county lacked the power to
borrow the money.  There are cases decided by courts of high re-
pute which maintain the opposite doctrine.  In reviewing these
cases, Woods, J., in Luther *v.* Wheeler, supra, very clearly demon-
strates their unsoundness.  He said: "The view expressed in these
and other cases is that to allow a recovery for money had and re-
ceived, while denying the power to corporate officers to make a
valid contract to repay borrowed money, would be, (1) to repudiate
such a contract in the abstract while ratifying and giving it full
effect in the concrete, and (2) to raise an implied contract to repay
where there is no power to make an express contract.  A statement
of the basis of the action for money had and received, we venture to
think, will show that these arguments are not sound.  Express con-
tracts and contracts implied in fact depend upon the will of the
parties to be bound, indicated in the one case expressly in some
form recognized by law, and in the other by circumstances from
which assent may be inferred as a conclusion of fact.  Quasi-con-
tracts, or contracts implied in law, are obligations imposed by law
as duties quite independent of the assent of the party held to be
bound, and often in spite of his earnest dissent.  In an action on
an express contract, or a contract implied in fact, the measure of
the recovery is ordinarily fixed by the promise.  In an action de-
pending on the obligation or duty called quasi-contract, the measure
of the recovery is the extent of the duty or obligation imposed by
law, and is expressed by the amount which the court considers the
defendant has been unjustly enriched at the expense of the plain-
tiff.  If a recovery were allowed against a municipal corporation on
a note for money borrowed, the judgment must be for the amount
of the note, however large, and although the money may have been
squandered.  But in an action against a town for money had and
received, the question is not what the claimant has parted with to
officers who were not authorized to take his money for the town, or
what they have promised him, but how much has the town been
benefited.  If the money was squandered, there can be no recovery;
if it were used extravagantly for buildings or enterprises not rea-
sonably necessary for municipal purposes, there can be no recovery
beyond the actual benefit.  This view, it will be seen, leaves no

room to say that a promise to pay back money is implied where no valid contract can be made, or that allowing any recovery for money had and received subjects the town to the same peril as to admit the unrestricted right of a municipal council to borrow money." While the action for money had and received depends not upon a contract express or implied in fact, it is bottomed on the right of the county to incur the liability to discharge which the money was applied. The constitution, article 7, section 7, paragraph 1, forbids the creation of any new debt without a vote of the people; but as this paragraph of the constitution was construed and interpreted in the *Dawson Waterworks* case, supra, a liability for an annual current expense is not a debt in the sense used in this provision of the constitution, if a sufficient sum of money to discharge the liability can be lawfully raised by taxation during the current year. This differentiation between the debts which come within the operation of the constitutional provision, and liabilities for legitimate current expenses to be paid out of the taxes which can be properly levied during the year in which the liability was incurred, is neither artificial nor arbitrary. This constitutional provision must be construed in the light of the history of the law on the subject in this State, and the long-established public policy of regulating the governmental affairs of a county. From the earliest times it has been the declared policy of this State that each year shall be a fiscal unit, and that current expenses should be met by a levy of taxes of the same year that the expenses were incurred. The system of taxation originally devised, and which still remains in force in this State, is that taxes shall be levied in the late summer or fall, and collected in the latter part of the year. At the time of the adoption of the constitution of 1877 the taxpayer was given until December 20, in which to pay the taxes assessed for that year; so that the revenue derivable from taxes was not available until near the close of the year. In the meantime it is necessary that the governing officers of the county should discharge the duties imposed by law of keeping up the bridges of the county, caring for paupers, keeping the public buildings in repair, providing for the expenses of courts, and for other necessary current expenses of running the affairs of the county. There was no authority of law for the county to borrow money with which to meet these expenses. The alternative, therefore, was presented, that, as each year's ex-

penses had to be paid out of the taxes of that year, the county must either incur a liability for these current expenses, or there must be a complete cessation of public activities and governmental functions until the taxes were collected. There is no provision in the constitution of 1877 designed to meet this contingency; and hence we may conclude that the inhibition against creating any new debt was never intended to prevent the county from contracting liabilities for current expenses in anticipation of its annual revenue, and which were to be paid from that revenue. This paragraph of the constitution, therefore, contains no prohibition against incurring a liability for a proper current expense, provided the sum total of such liabilities does not require an unreasonable tax or exceed the constitutional tax limit. If a legal liability for a current expense is incurred, and the county issues a note or a bond to pay it, the note or bond is void. The creditor can not enforce such invalid note or bond by suit, but he can enforce the payment of the county's primary liability to him. If the county received the money borrowed by its officers without authority, and applied it to the purchase of property which it was authorized to buy and hold, or to defraying any other liability which it could legally incur, the lender would stand in the same relation to the county as the person to whom his money was paid. In this case, the bank was not an officious intermeddler. Its payment of the warrants was not an illegal act. The statute declares that county warrants are negotiable by delivery, subject to the treasurer setting off any sum that the payee may be due the county at the date of the warrant. Pol. Code §467. Without any request or arrangement of any kind the bank could have retained the warrants which were surrendered to it by the warrant-holders, and collected them from the county. The loan contract was void in its totality. Hence the money paid the warrant-holders was the bank's money. To illustrate that the bank's right to be reimbursed for money actually applied to legal current expenses exists independently of the illegal contract of loan, let us assume that the transaction was this: The bank had purchased these warrants, and the county borrowed from the bank a sum of money, a part of which was used in paying for these warrants, and the balance turned over to the county authorities and squandered by them. The loan was illegal; but can it be asserted in a court of conscience that the county was relieved, by the illegal contract of

loan, of its honest obligation represented by the warrants? The county can not wipe out its liability on its warrants by paying them with the warrant-holder's money. In the instance supposed the bank purchases warrants before the loan. In the present case the bank paid for the warrants with the money for which the notes were given. We recognize the soundness of the rule that where the constitution of a State forbids not only the borrowing of the money but also the incurring of the liability which was discharged by the money borrowed, the lender is without remedy against the county to recover his money in any form of action, legal or equitable. But in reaching the conclusion which we have in this case, it is upon the construction of the constitution that this paragraph does not prohibit the incurring of a liability for legitimate current expenses to be paid, or which may lawfully be paid out of the taxes of that year. We are but applying to this paragraph the construction enunciated in the *Dawson Waterworks* case. In that case the waterworks company contracted with the City of Dawson to supply it with water for a series of years. This court pronounced the contract void, because forbidden by the constitution; but when the city elected to repudiate the contract, it was held that the city must pay for the water consumed previously to the repudiation of the contract. The right of equitable relief for the recovery of money actually paid to a county, and by it afterwards used in defraying actual and legitimate expenses, which were a proper charge upon the treasury, has been recognized in several cases decided by this court. *Milburn* v. *Glynn County,* 109 *Ga.* 473; *Johnson* v. *Pinson,* 126 *Ga.* 121; *Hall* v. *Greene County,* 119 *Ga.* 254; *Mason* v. *Comm'rs of DeKalb County,* 104 *Ga.* 35. While it may be true that what was said on this subject in these cases may have been to some extent obiter dicta, it illustrates that when other phases of this constitutional provision were being construed by the court, the proposition under discussion was recognized, and the decisions made with regard thereto.

The only remaining question is whether, under the pleadings and evidence submitted on the interlocutory hearing, the treasurer should be enjoined from paying out the county funds in his hands, raised from taxes levied for the year 1906, until it may be judicially determined how that fund should be distributed. The petition was filed in January, 1907, and on the interlocutory hearing in March

following it appeared that the treasurer had in his hands a certain amount of money raised from the taxes of 1906, and that this fund would likely be increased by a stated amount from the collection of the balance of the taxes assessed for that year. The amount in hand, together with the expected accretion, was insufficient to pay the various county warrants which had been issued by the county commissioners for liabilities incurred during the year 1906. It appeared from the evidence that an attack was made upon some of the warrants, because they were issued for liabilities which were not chargeable against the taxes of the year 1906, and also that some of the warrants were issued to defray expenses improperly and illegally incurred. Some of the warrants were issued prior to December 1, and many were issued subsequently. The treasurer had not kept separate the various special funds as directed by the statute. The code provides that warrants must specify the fund on which they are drawn, and that they shall be paid according to certain priorities and proportions. Pol. Code, §§ 361, 463, 464, 465, 466. As we have reached the conclusion expressed in a former part of this opinion that the bank is subrogated to the rights of the holders of the warrants discharged with its money, and as the constitutional scheme contemplates that the liabilities of a particular year should be paid from the taxes levied for that year, under the facts developed on the interlocutory hearing a case is presented for the intervention of a court of equity by the writ of injunction to impound the fund in the hands of the treasurer until it may be judicially ascertained to whom and in what proportions this fund should be appropriated.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*