## COMMERCIAL TRUST CO. OF HAGERSTOWN v. LAURENS COUNTY.

(District Court, S. D. Georgia, W. D. July 23, 1920.)

No. 171.

1. **Courts ☞312(2)—Indorser of notes held not "assignee," so as to preclude right to sue.**

Where the payee of notes was merely a broker for their negotiation, and they became effective only when sold and indorsed, a purchaser is not an "assignee," within the meaning of Judicial Code, § 24, subd. 1 (Comp. St. § 991[1]). whose right to sue in a federal court is dependent on that of the indorser.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignee.]

2. **Estoppel ☞62(6)—County held not concluded by recitals in promissory notes.**

General recitals, in notes executed by a county in Georgia for borrowed money, that all things necessary to render the notes valid obligations of the county had been done, *held* not to estop the county to deny their validity, where such recitals also show that the money was borrowed to pay current expenses, which under the law of the state is unauthorized and beyond the powers of the county officers.

3. **Counties ☞151—What constitutes "casual deficiency," authorizing temporary loan.**

Under the provision of Const. Ga. art. 7, § 7, prohibiting counties from incurring indebtedness unless authorized by vote of electors, except for a temporary loan "to supply casual deficiencies in revenue," such a deficiency occurs only when the taxes laid for a year prove insufficient to meet the expenses for that year, and such a loan is not authorized because the funds on hand are insufficient to meet current expenses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Casual Deficiency.]

**4. Counties ⊂∞171—Holder of notes exceeding debt limit not bona fide purchaser.**

Where notes executed by a county show on their face, in connection with the public records, that they are in excess of the constitutional limit, a purchaser is not protected as a bona fide holder without notice, and while the county may be held liable to the extent of the indebtedness which it might legally contract, recovery on such liability must be apportioned among all note holders entitled to share therein.

**5. Counties ⊂∞210—Money furnished to pay legal indebtedness recoverable as money received.**

One who furnished money to a county, although under a contract which the county had no authority to make, which money it used in payment of legal indebtedness, may maintain an action for its recovery as for money had and received.

**6. Counties ⊂∞203—Filing of suit, with service, sufficiently "presented for audit."**

Under Civ. Code Ga. 1910, § 411, providing that claims against a county must be presented for audit within 12 months, the filing of suit against the county, followed by service on the auditing officers within the 12 months, is a sufficient presentation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Presented.]

**7. Pleading ⊂∞320—Defendant not entitled to bill of particulars respecting papers in its possession.**

A county *held* not entitled to a bill of particulars respecting warrants on which a suit against it is based, where the warrants are in its possession and have never been in the possession of plaintiff.

At Law. Action by the Commercial Trust Company of Hagerstown against Laurens County. On demurrers to petition. Sustained, with leave to amend.

See, also, 267 Fed. 897.

Jones, Park & Johnston, of Macon, Ga., for plaintiff.

Hall, Grice & Bloch, of Macon, Ga., and M. H. Blackshear and Burch & Daley, all of Dublin, Ga., for defendants.

SIBLEY, District Judge. Commercial Trust Company of Hagerstown, as a corporation of Maryland, sues at law Laurens county, Ga., upon three promissory notes, each for $10,000, dated January 10, 1918, due December 31, 1918, and payable to Frank Scarboro Company, or order, signed in the name of Laurens county, by its treasurer and county commissioners, and indorsed, "For value received without recourse," by Frank Scarboro Company. Each note, besides matters quoted hereafter, recites, "This note is issued in pursuance of a resolution duly adopted by the commissioners of the county of Laurens on January 10, 1918, and duly signed by the clerk of commissioners of said county, as required by law," and is accompanied by a copy of the resolution as follows:

"Whereas, there is a casual and temporary deficiency in the public funds in the treasury of the county of Laurens; and whereas, there is a casual and temporary need of money to meet the current expenses of the county government: Therefore be it resolved that to cover said casual and temporary deficiency, in order to meet the current expenses of the county government, we hereby authorize and empower the treasurer and county commissioners

⊂∞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the county of Laurens to negotiate a temporary loan for the sum of seventy-five thousand dollars for the county of Laurens upon the best rate of interest possible. * * * Said notes to be payable thirty-first day of December, 1918."

There is exhibited, as accompanying the notes, a statement, signed by Laurens county, by its clerk, addressed to Frank Scarboro Company, purporting to be information given for the purpose of obtaining a loan of $75,000, and showing, among other things, "Assessed valuation of property for 1917, $9,360,654," and that the notes for the loan are issued under authority of article 7, § 7, of the Constitution of Georgia.

[1] 1. Jurisdiction rests on diverse citizenship, and is questioned by demurrer, because the citizenship of Frank Scarboro Company is not alleged, and Judicial Code, § 24, subd. 1 (Comp. St. § 991[1]), prevents suits in a federal court by an assignee of a note unless the assignor could have sued. The presumption is against jurisdiction, and the facts giving it must be clearly and positively averred. It must therefore be assumed that Frank Scarboro Company is a citizen of Georgia for purposes of jurisdiction. But the petition, as amplified by amendment, alleges that Scarboro Company was the mere broker and agent of Laurens county, employed to sell the notes, and never advanced any money or credit for the notes, or became at any time a creditor of the county, which owed no one anything until plaintiff paid its money for the notes to Scarboro Company as the county's agent. Such facts would constitute the plaintiff, though in form an assignee, in substance an original creditor, and as such it could maintain the suit. Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118; Baltimore Trust Co. v. Screven County (D. C.) 238 Fed. 834.

2. A plea to the jurisdiction alleges the Scarboro Company to be a corporation of Georgia, and denies that it was the agent of Laurens county in this transaction. The plea, if true, is good, and a motion to strike it will be overruled.

[2] 3. The general demurrers aver that no cause of action is set forth, because of a provision of article 7, § 7, of the Constitution of Georgia, as follows:

"And no such county, municipality, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum of the assessed value of taxable property therein, without the assent of two-thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law."

The petition alleges no election, but does allege "a casual deficiency in revenue," and the notes, besides the reference to the resolution of the commissioners, contain recitals as follows:

"It is hereby certified and recited that each and every act, condition, and thing required to be done, to have happened, and to be performed precedent to and in the issuance of this note, has been done, has happened, and has been performed in full and strict compliance with the Constitution and laws of the state of Georgia, and that this note is within every debt and other limit prescribed by law, and the faith and credit of the county of Laurens are hereby irrevocably pledged to the punctual payment of the principal and interest of this note, according to its terms."

Where authority to make a loan exists or may arise upon certain conditions, that such recitals may be estoppels, conclusively establishing the validity of such obligations, notwithstanding constitutional provisions like that quoted, has been repeatedly adjudicated. The cases are reviewed in Gunnison County v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552; Stanly County v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126. The Constitution may thus be annulled by a lie. But there must be such explicit statements of fact as may easily deceive, they must be made by officers who have authority under the law to ascertain and state the facts, and the person claiming the estoppel must actually have been deceived to his hurt, or, as it is generally stated, must be "a bona fide holder for value." In Georgia, while counties are corporations, none of their officers have any general authority to borrow money. They have only such powers as are expressly given them by law. Dent v. Cook, Ordinary, 45 Ga. 323. In this they resemble officers of the federal government. Floyd Acceptances, 7 Wall. 667(5), 676, 19 L. Ed. 169. The authority to borrow money is given county officers only in the two situations stated in the quoted provision of the Constitution: First, to supply a casual deficiency in revenue; and, second, on the assent of two-thirds of the qualified voters.

Under the law of Georgia an election to ascertain such assent is called, conducted, and the result declared by the county commissioners. Code, § 440 et seq. So that a recital by them that the authority of an election existed, though false, would no doubt estop the county. The recital of these notes that every condition precedent to their issuance had happened, if it stood alone, would probably have this result; but this recital is preceded by the reference to the resolution of January 10, 1918, as the authority for making these notes and that resolution contains no allusion to an election. It must therefore be concluded that this special reference overrides the more general recital, and confines the authority intended to be asserted by the notes to this resolution, and excludes any reliance by the lender upon an election.

[3] Confining the inquiry, therefore, to the existence of an authority because of a casual deficiency in revenue, we find the estoppel unsustainable. These words have a definite and well-established significance in the law of Georgia. The constitutional scheme of county finance worked out in the statutes is that liabilities for lawful things and services may be incurred all through the fiscal, which is also the calendar, year, if there be no money on hand to pay for them, but that in the summer taxes shall be laid, to be collected in the fall, sufficient to cover all such liabilities. No debt, within the meaning of the Constitution, is thereby created. Dawson v. Dawson Waterworks Co., 106 Ga. 696, 32 S. E. 907; Butts County v. Jackson Banking Co., 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. Rep. 244. If, after the levy of the taxes, it appears that they will, from a casual and unanticipated cause, not cover the liabilities for that year, then a casual deficiency in revenue arises, and a limited loan may be resorted

to to balance the annual budget. The resolution stated no such situation, but only that there was "a casual deficiency in the public funds and a temporary need of money to meet the current expenses of the county government," and that the money was borrowed "in order to meet the current expenses of the county government."

Under the scheme of county finances above outlined, a deficiency of ready money to meet current expenses is entirely normal and must be endured. It has always been held that the borrowing of money to pay current liabilities in cash, the money to be repaid out of the taxes of the year, exactly as was attempted here, is contrary to the Constitution, and the loan void. Wood v. Commissioners of Greene County, 60 Ga. 558; Hall v. Greene County, 119 Ga. 253, 46 S. E. 69. Town of Wadley v. Lancaster, 124 Ga. 354, 52 S. E. 335; Butts County v. Jackson Bank, 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. Rep. 244; McCord v. Jackson, 135 Ga. 178, 69 S. E. 23(6). While, therefore, the county commissioners, as the fiscal officers of the county, no doubt are authorized to ascertain and declare the existence of a casual deficiency in revenue, and, had they done so, might have created an estoppel upon the county to deny it, in this case they have not so declared, but, on the contrary, have plainly stated an illegal purpose, which was fully known to the plaintiff in lending his money. It follows that the notes taken for the loan are invalid and unenforceable, if nothing further appears than is recited in the notes.

[4] But the petition alleges that in point of fact the notes were issued to supply a casual deficiency in the revenue, though it does not allege the extent of that deficiency. If such a deficiency existed, the power to borrow money arose in the county commissioners, but limited to one-fifth of 1 per cent. of the assessed taxable value of the property of the county. An exhibit to the petition places this value at $9,360,654, one-fifth of 1 per centum of which would be $18,720, and no contradiction of these figures is made in the petition. Not only has the Georgia Constitution, as it might do, refused to leave the ascertainment of the limit of indebtedness to the county commissioners, but has referred it to a fixed and accessible public record, for at the time the Constitution was adopted and ever since the law has required officers other than the commissioners to make up full digests of the taxable property of the county, filing a copy at the county courthouse and another at the State Capitol, both open to public inspection. The assessment so made for the year in which the casual deficiency in revenue occurred is the standard to which the Constitution refers. The lender was obliged to inspect it, and could not rely upon any statement of the commissioners in respect thereto. Dixon County v. Field, 111 U. S. 83, 95, 4 Sup. Ct. 315, 28 L. Ed. 360; Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145. The lender here was referred to the applicable constitutional provision and informed as to the amount of taxable property. The amount of the indebtedness to be incurred was known to be $75,000, and the plaintiff itself took $30,-000 of the notes. As to this matter plainly it could not have been deceived, nor can it be considered a bona fide holder without notice.

The facts being known, the county could obligate itself only to the extent of the actual casual deficiency, and then to an amount not exceeding $18,720. Even in a suit at law, since the transaction is void merely for a defect in authority, and not because penalized by law, it is enforceable to the extent that the authority existed; and upon proper allegation and proof that no other person was interested in the liability of the county, the plaintiff might recover in this suit. Francis v. Howard County (C. C.) 50 Fed. 44, affirmed, 54 Fed. 487, 4 C. C. A. 460; City of Columbus v. Woonsocket, 114 Fed. 162, 52 C. C. A. 118. It appears, however, that notes other than those held by the plaintiff were to be issued, and in point of fact, though not appearing in this record, they are now sued in this court. Under this state of facts, resort to equity would be necessary to ascertain whether first negotiated notes alone should receive payment to the extent of the power of the county to contract debt (Daviess County v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026), or whether the notes were negotiated simultaneously and whether the liability should be prorated to all the notes (Truman v. Harmony [D. C.] 198 Fed. 557, 562). In view of the allegations of the petition that a casual deficiency really existed in the revenue, leave will be granted to file, within 30 days, an amendment setting up its amount, and that no other person is a creditor or is interested in the obligation of the county in regard to supplying it. In default of such an amendment, the petition will be dismissed.

[5] 4. Plaintiff has also brought a separate suit at law against Laurens county for money had and received, in which, omitting reference to any notes or formal loan, it is alleged that this money was received by the defendant on December 30, 1918, and used to pay off and retire certain county warrants theretofore duly issued by the county commissioners for lawful claims and charges against the county, but that the warrants cannot be fully specified, because they are in the hands of the commissioners and their clerk, who have refused permission to inspect them, or to furnish a list thereof. By Code, § 410, the fiscal officers must audit every claim against the county, and on its allowance the same is registered, and the claimant given a warrant on the treasury for its payment, specifying the fund against which it is drawn. These warrants are in the nature of judgments that the claim is valid, and establish validity at least prima facie. Smith v. Fuller, Ordinary, 135 Ga. 271, 69 S. E. 177(3), Ann. Cas. 1912A, 70. Money used by the county to pay them is thus well shown to have been applied to the lawful use of the county.

While, as we have seen, the county could not lawfully borrow money to meet these warrants, but must wait for the coming in of the taxes laid therefor, the loan is void only for the defect of power, and is not an act punished by any law. The maxim in pari delicto does not apply. While the money does not by its mere reception become public money, for the treasurer's sureties are not even liable for it on his bond (Medlock v. Commissioners of Dekalb County, 104 Ga. 35, 30 S. E. 513 [5]), nor is the treasurer entitled to commissions for handling it (Hall v. Greene County, 119 Ga. 253, 46 S. E. 69), yet when actually applied

by the county officers to its lawful use the county becomes liable for it, not on any express or inferred contract, but ex æquo et bono to the extent only that it is so used (Butts County v. Jackson Bank, 129 Ga. 801, 60 S. E. 149, 15 L. R. A. [N. S.] 567, 121 Am. St. Rep. 244; Citizens' Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443; Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378, and cases cited). This remedy seems appropriate, where the lender's money is directly used by the county through its proper officers in the extinguishment of lawful claims against the county, or in purchases it then might lawfully make.

[6] 5. But Code, § 411, requires that all claims against the county be presented for audit within 12 months after they accrue or become payable, or the same are barred. The statute applies to such a claim as this. Butts County v. Wright, 136 Ga. 697, 71 S. E. 1046. But the filing of a suit, followed by service on the auditing officers within the 12 months, is a sufficient presentation. Pearson v. Newton County, 119 Ga. 863, 47 S. E. 180. Since it is the actual application of the money to the lawful use of the county that first renders the county liable, and since this is alleged to have occurred December 30, 1918, this suit, served April 18, 1919, is in ample time.

[7] 6. The special demurrer calling for a bill of particulars of the warrants paid is not well taken, the knowledge thereof lying with the defendant, rather than the plaintiff, under the facts alleged; but that seeking an allegation as to what officer or officers of the county plaintiff dealt with is well taken (Cherokee Mills v. Gate City Cotton Mills, 122 Ga. 268, 50 S. E. 82), and, unless the omission is cured or excused by an amendment within 30 days, the petition will be dismissed.