## CITIZENS BANK OF MOULTRIE *v.* ROCKDALE COUNTY.

The controlling question in this case being, whether a county is estopped to set up that a loan to meet a casual deficiency in revenue and current expenses exceeded the constitutional limit of one fifth of one per cent. of the assessed value of the taxable property of the county, where it is recited in the note, given by the county for such loan, that the loan was within such limit, and it appearing that a verdict is demanded for the plaintiff if the county is estopped by such recital, and that a verdict for the county is demanded if the county is not estopped by such recital; and such question, after a motion for rehearing, coming on for decision by a full bench of six Justices, and the Justices being equally divided on that question, Russell, C. J., Beck, P. J., and Hill, J., being of the opinion that the county was so estopped by such recital, and Atkinson, Gilbert, and Hines, JJ., being of the opinion that the county was not so estopped, the judgment of the court below stands affirmed by operation of law.

SYLLABUS BY RUSSELL, C. J.

1. When this case was here before (*Citizens Bank of Moultrie* v. *Rockdale County*, 152 *Ga.* 711, 111 S. E. 434), this court held that under the resolution of December 3, 1918, and the order in pursuance thereof, under which the commissioners were empowered to negotiate a temporary loan of $15,000 to meet the current expenditures of the county government, and the promissory note therefor contained the recitals appearing in the note in suit, such note upon its face was not in violation of the provisions of the constitution contained in article 7, section 7, paragraph 1, of the constitution, so as to make it unenforceable. It was further held by this court that it is exclusively within the province of the county commissioners to adjudge and determine in every instance whether a casual deficiency in the public funds of the county in fact exists, and likewise the purpose to which the proceeds of the loan are to be applied; and that the decision of the commissioners thereon is final. It was further held that the public will be estopped by the acts of any public officer done in the exercise of a power which is expressly conferred by law.

2. In view of the rulings of this court when the case was here before (and which rulings became a part of the law of the case), the only pertinent question remaining in the suit upon the note now under review is whether the County of Rockdale is estopped to deny its liability upon the note now in suit, by reason of the fact that the

county would not be heard to deny the truth of statements which the commissioners were authorized to make and certify, as to acts within the scope of their duties and powers as expressly conferred by law, even though such facts stated and so certified were in fact untrue.

3. If a political subdivision of this State having general authority to issue bonds for specified purposes puts forth an evidence of indebtedness purporting to be issued for a lawful purpose, and therein recites, through its duly authorized proper officers whose province and duty it is to ascertain and peculiarly know the facts, compliance with the specified provisions of the law essential to the issuance of the evidence of indebtedness (whether note or bond), such political division of this State, as against a bona fide holder of the bond purchased for value and on faith of the recitals, is estopped to deny the truthfulness of the recitals.

4. The holder of a negotiable evidence of debt incurred in an irregular or illegal manner, but reciting a compliance with the law in regard to the incurring of the debt, will be entitled to prevail in a suit to enforce collection of such instrument, where such political subdivision of this State has the power to incur a debt, notwithstanding a defense setting up the irregularities in the manner in which the debt was incurred.

5. As against a suit brought to recover upon the note which was the basis of the action in the present case, the maker of the note is estopped to deny that the plaintiff, who purchased the note before maturity, was a bona fide purchaser, for any of the reasons set up in the answer or the amendment thereto; and the defense of payment as pleaded was insufficient to affect the rights of one who purchased the note in good faith and for value. If that portion of the defendant's answer last mentioned be considered, not as a plea of payment, but as notice to the payee of the note of the invalidity and illegality of the transaction, it would not affect the plaintiff in the absence of proof of actual knowledge upon his part of the real consideration of the note.

6. It was error to overrule the motion to strike the answer, and also error to overrule the demurrer to the amendment of the answer.

No. 3431. SEPTEMBER 29, 1923.

Complaint. Before Judge Hutcheson. Rockdale superior court. September 16, 1922.

*James L. Dowling* and *Erle B. Askew,* for plaintiff.

*J. H. McCalla* and *Jones, Park & Johnston,* for defendant.

RUSSELL, C. J. This is the second appearance of this case before this court. In *Citizens Bank of Moultrie* v. *Rockdale County,* 152 *Ga.* 711 (supra), this court reviewed the ruling of the trial court in dismissing the plaintiff's petition upon the demurrers filed by the defendant, and held that the bank's petition set forth a good cause of action. It was then held, where suit was brought

upon a note which was executed by virtue of an order empowering the county commissioners of Rockdale County to negotiate a temporary loan to meet a casual and temporary deficiency, and it was recited in the note executed by authority of a resolution of the county commissioners, in which it was recited that " each and every act, condition, and thing required to be done, to have happened, and to be performed precedent to and in the issuance of this note, has been done, has happened, and has been performed in full and strict compliance with the constitution and laws of the State of· Georgia, and that this note is within every debt and other limit prescribed by law, and the faith and credit of the county  .  . are hereby irrevocably pledged to the punctual payment of the principal and interest of this note, according to its terms," by one who had purchased it for value before due and without notice of any defense, and to which note was attached a copy of the order of the commissioners, that the petition was not demurrable on the ground that the plaintiff as the purchaser of the note had taken it with notice that it was given in violation of the provisions of article 7, section 7, paragraph 1, of the constitution of this State (Civil Code of 1910, § 6563). It was further held in the seventh and eighth headnotes that while the public can not be estopped by the acts of an officer done in exercise of a power not conferred, the public will be estopped by the acts of any public officer done in the exercise of a power which is expressly conferred by law. Upon the trial of the cause now under review, the plaintiff made a motion to strike the answer of the defendant, which motion was overruled. The defendant amended its answer, and the plaintiff's demurrers to the original answer and the answer as amended were overruled. Exceptions pendente lite were filed to both of these rulings, and upon the exceptions preserved error is assigned in the pending bill of exceptions. The case then went to trial before a jury, and resulted in a verdict in favor of the defendant. Various assignments of error are made in the motion for new trial as amended, and in the bill of exceptions error is assigned upon the judgment refusing a new trial.

In our view, the adjudication of the case depends altogether upon the correctness of the ruling of the trial court upon the motion to strike the defendant's answer, and upon the demurrer to the amendment thereto; and it will not be necessary to rule upon the

judgment of the court refusing a new trial.　After a careful examination of the exhaustive briefs of able counsel for both parties, and after reducing all the questions raised in the brief to their last analysis, the ultimate controlling question in this litigation is whether the doctrine of estoppel as applicable to a natural person is varied by reason of the fact that a party against whom a recovery is sought is a subdivision of the government, operating within its prescribed territory through officers designated by law who are charged with the administration of its affairs.　To state the question differently, can a county of this State rely upon defenses which a citizen under precisely the same circumstances would not be heard to assert, and escape liability from an obligation where under the same circumstances a citizen would be compelled to pay?　And especially in a case such as the present, where the rights of bona fide purchasers of a note for value and before its maturity must be affected thereby.

As appears from the statement of facts when this case was here before (152 *Ga.* 712-715), the petition as amended, which was held to be good, alleged not only that the loan was made for the purpose of obtaining a temporary loan to supply a casual deficiency of revenue existing at the time of the execution of the note, but that the note was executed pursuant to a resolution passed by the county commissioners certifying that fact, which was attached to the note, as well as a certificate of the attorneys for Rockdale County, certifying that in their opinion the note was a valid and binding obligation of the County of Rockdale, Georgia.　And the note itself recited that " each and every act, condition, and thing required to be done, to have happened, and to be performed precedent to and in the issuance of this note, has been done, has happened, and has been performed in full and strict compliance with the constitution and laws of the State of Georgia, and that this note is within every debt and other limit prescribed by law, and the faith and credit of the County of Rockdale are hereby irrevocably pledged to the punctual payment of the principal and interest of this note, according to its terms."　In the previous adjudication in this case the petition was held to set forth a good cause of action.　In the present investigation we are to consider the validity of the answer which the trial judge refused to strike upon the plaintiff's motion.　The answer of the defendant denies

indebtedness in any manner or form, avers that the note which is the basis of suit is null, void, and unconstitutional, and especially pleads as a further defense that the note is one of a series of six notes for money borrowed from the Frank Scarborough Company for the payment of an old indebtedness which had accrued prior to 1916, and which had been from time to time renewed and, which were fully paid to said Frank Scarborough Company on December 3, 1918, in the City of Conyers, Georgia. This answer was duly verified by the commissioners of roads and revenue of Rockdale County. The plaintiff's motion to strike was as follows: " Now comes the plaintiff, having elected to rely upon the second count in its petition, and moves the court to strike the defendant's answer, upon the ground that the same sets forth no defense to plaintiff's suit, because plaintiff is a bona fide purchaser, and the matters of defense alleged do not constitute a defense to an unconditional contract in writing in the hands of a bona fide purchaser." The trial judge overruled this motion.

We think that the motion to strike should have been sustained, and that the learned trial judge erred in overruling the motion to strike the answer of the defendant. The paragraphs of the answer in which the general statement is made that the defendant is not indebted in manner and form, etc., set up no defense against the unconditional contract in writing upon which plaintiff's petition declares. In response to a suit upon such a note there must be stated facts setting up some specific, valid, legal reason why the maker should be relieved from an obligation the execution of which is not denied. As to the statement in the sixth paragraph of the answer, in which the defendant " avers that said note or instrument in writing, basis of suit, purporting to have been given to supply a casual deficiency, is null, void, and unconstitutional," this court ruled upon the point when the case was here before, and held that plaintiff's petition " was not demurrable upon the ground that the plaintiff as the purchaser of the note had taken it with notice that the note was given in violation of the provisions of the constitution above recited " (art. 7, sec. 7, par. 1; Civil Code of 1910, § 6563). The precise language employed in the ruling upon this point was as follows: "Where authority to borrow money is conferred upon certain political divisions of the State by the constitution, and in pursuance of that authority the proper au-

thorities of one of those political divisions (in this case the county commissioners of a certain county) borrowed money and gave a promissory note in which are recitals of facts showing the authority of such officers to borrow the money for a certain legal purpose, such recitals will estop the county, in a suit by a purchaser of the note bona fide, for value, before due, and without notice, from having the suit dismissed on demurrer on the ground that such note created a debt prohibited by the constitution of the State." A large number of authorities were cited by this court in its previous decision (152 *Ga.* p. 721), among them being *Town of Climax* v. *Burnside,* 150 *Ga.* 556 (104 S. E. 435), in which it was held that " If a municipal corporation, having general authority to issue bonds for specified purposes, puts forth a negotiable bond issued for such lawful purpose, and therein recites, through its duly authorized proper officials, whose province and duty it is to ascertain and peculiarly know the facts, compliance with the specific provisions of the law essential to the issuance of the bond, the municipality is, as against a bona fide holder of the bond, purchasing for value and on faith of the recitals, estopped to deny the truthfulness of the recitals." This court ruled, in *City of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696, 734 (32 S. E. 907), upon the same point, that " Where a municipal corporation has the power to incur a debt, and the debt is incurred in an irregular way, it is settled law that the innocent holder of a negotiable instrument issued by the authorities of such city, and which recites a compliance with the law in regard to the incurring of the debt, will be entitled to prevail in a suit to enforce the collection of such instrument, notwithstanding a defense setting up the irregularities in the manner in which the debt was incurred."

In the *Climax* case, supra, it was held that " the municipality was estopped to deny " the recitals in its bonds, or to question the validity of a bond in the hands of a bona fide purchaser and containing recitals similar to those in the note which is the basis of the suit of the plaintiff in this case, and, construing section 303 of the Civil Code, held that the ruling of the court in the *Climax* case was not contrary to the provisions of that section. The public cannot be estopped by the acts of any officer done in the exercise of a power not conferred, but the public will be estopped by the improper acts of any officer done in the exercise of a lawful

power expressly conferred. That portion of the answer of the defendant contained in the seventh paragraph thereof, and relating to an alleged payment of the note, presented no valid ground of defense to the suit of the plaintiff, for the reason that there was no denial anywhere in the answer of the third paragraph of the petition, which contained a copy of the note containing the recitals referred to, and in which it was alleged that the petitioner was a bona fide holder for value, before maturity, and without notice. The answer of the defendant to the above-mentioned paragraph three of the petition is "That for want of information defendant can neither admit nor deny the allegations set out in paragraph three of the petition, but defendant denies that it is indebted to the plaintiff in the manner and form alleged or otherwise." This answer, made by a party who must be presumed to know the facts, is so evasive and equivocal as to be tantamount to an admission, as has frequently been held by this court; and the general denial of indebtedness with which the paragraph concludes contributes nothing towards relieving the situation. The note and the resolution recited that a casual deficiency in revenue existed, and this was a declaration by the county commissioners (whose peculiar duty it is to know when a casual deficiency exists) ; and for this reason the defendant was estopped to set up that the note was given to pay an old debt, as alleged in the seventh paragraph of the answer.

The question as to whether a political subdivision such as a town, township, or county is estopped from denying recitals embodied in evidences of debt issued by its officers who are clothed with power to create an indebtedness has been frequently adjudicated, and it has been held almost time without number that the application of the doctrine of estoppel in such cases is not different from that affecting individuals. It has further been held that if the recitals of an obligation are comprehensive enough to evidence the power to create the debt in question, a bona fide purchaser of a negotiable evidence of debt of a political subdivision need look no further or enquire to what use the funds obtained from the sale of such negotiable instrument were applied. For this reason the question of whether the notes were issued, as alleged in the seventh paragraph of the answer, *to pay an old indebtedness,* rather than to cover a casual deficiency in the revenue,

was not a matter of concern to the plaintiff in this case, and could not be pleaded as a defense against its action. The county commissioners of Rockdale County had a right to borrow money to discharge a casual deficiency in revenue. They certified that the note in suit in this case was given to obtain money to meet a casual deficiency in revenue; and unless the bank as the purchaser of this note had actual notice, before it purchased the note, that such was not the case, it could safely rely upon the recitals contained in this note, and the defendant could not rely upon any fraud or improper conduct of its own officers, for they were exercising a power which had been expressly conferred upon them by law.

It is argued by learned counsel for the defendant, that the facts as to the assessed valuation of the property in Rockdale County, and the fact that the resolution provided for a loan of $15,000, were sufficient to put the bank upon such inquiry as to charge it with constructive notice of information which could have been easily ascertained. We deem this position untenable. The answer to the proposition is twofold. In the first place, the recitals of the note and the resolution attached thereto obviated any necessity for any further information than that the county commissioners had power, without a vote of the people, to borrow money to meet a casual deficiency. The fact as to whether there was a casual deficiency or not was established by the certificate of the county commissioners, because they alone could determine whether such a deficiency existed. In the second place, the circumstance to which reference is made by counsel would not indicate that a casual deficiency did not in fact exist. As held by this court in passing upon the demurrer involving the same point as now before us in the consideration of the answer, it cannot be said that any "new debt" was being created by reason of the fact that the assessed valuation of the taxable property of the county was a little more than $2,500,000, coupled with the fact that the loan proposed in the resolution was fixed at $15,000. Any political subdivision of the government can borrow as a temporary loan a sufficient amount to pay an existing debt and to make its operations balance at the end of the fiscal or calendar year, without creating any new debt, provided it either has in its treasury a sufficient amount derived from taxes to pay the temporary loan, or it can raise by

taxation within the year such an amount as will discharge this temporary obligation made to cover its municipal expenditures for the fiscal or calendar year. See *Wilson* v. *Gaston,* 141 *Ga.* 770 (82 S. E. 136); *Monk* v. *Moultrie,* 145 *Ga.* 843, 845 (90 S. E. 71); *Wright* v. *Southern Railway Co.,* 146 *Ga.* 581 (91 S. E. 681); *Mayor &c. of Hogansville* v. *Planters Bank,* 147 *Ga.* 346 (94 S. E. 310). As appears from the record, the taxes for the year amounted to $48,000; and so the bank as the purchaser of the note would have had every reason to believe that the sum of $15,000, even if the entire sum mentioned in the resolution had been borrowed, could have been paid out of what could very easily have been collected out of the much larger sum of $48,000. In our opinion the answer of the defendant wholly failed to present a defense to the motion to strike, and the judge erred in declining to strike it.

After the court's rulings upon the motion to strike, the defendant presented several amendments to its answer, as follows: (1) "Defendant shows, by way of further pleading to the second count of said petition, that the note sued on was executed by this defendant on the 3rd day of December, 1918, at the same time and in connection with an execution of two other notes for like amount, said notes aggregating $15,000.00." (2) "Defendant shows that each of said $5,000.00 notes, aggregating $15,000.00 as aforesaid, were delivered to Frank Scarborough Company in order that the said Frank Scarborough Company might use same in renewal or extension of three notes of like amount, executed by this defendant on the second day of April, 1918, and at the time owned and held by the Citizens Bank of Havre De Grace." (3) "That instead of using said notes in the manner and for the purpose aforesaid, the said Frank Scarborough Company negotiated one of said notes with the plaintiff herein, another of said notes with Frank Baker, and the remaining note with the Exchange Bank of Fitzgerald, presumably realizing therefor the face value of each of said notes." (4) "That the sum of money raised by the Frank Scarborough Company was not applied by the said Frank Scarborough Company to the extinguishment of the three notes dated April 2, 1918, nor was said sum of money delivered to this defendant, nor to any officer of this defendant, nor has defendant ever received or collected any amount of money whatsoever as a consideration for said notes." (5) "That said notes are and

were totally without consideration and unenforceable." (6)
" That attached to each of said $5000.00 notes was a resolution
reciting the need for certain purposes of the sum of $15,000.00,
and authorizing the county commissioners of the County of Rock-
dale to execute notes for and borrow the said sum of $15,000.00
to supply said need." (7) " That the assessed value of the tax-
able property in the County of Rockdale for the year 1918 was
$2,622,310.00, of which one fifth of one per centum amounted to
only $5,244.62. That for the reason aforesaid it was illegal for the
County of Rockdale to borrow, even for the purpose of supplying a
casual deficiency of revenue, any amount of money in excess of the
sum of $5,244.62, and the execution of notes for the purpose of
borrowing the sum of $15,000.00 was an unauthorized act pro-
hibited by the constitution, and said notes so executed were void."
(8) " That attached to each of said notes was a statement or
digest, reciting the floating indebtedness of $15,000.00, reciting the
assessed value of taxable property in the county to be the sum
aforesaid, which said statement should and did put plaintiff up-
on notice that said note so purchased by it was unconstitutional
and void." (9) " That plaintiff is not a bona fide holder of said
notes; for that the said plaintiff had notice, before purchasing the
same, that said note was contrary to article 7, section 7, paragraph
1, of the constitution of this State." (10) " That said note was
not executed for the purpose of supplying a casual deficiency of
revenue; that in fact no casual deficiency of revenue existed at
the time of the execution of said notes; and said notes were
executed for the purpose of extending or renewing a past indebted-
ness of $15,000.00, which had been created by the County of Rock-
dale during a period of three years from 1913 to 1916, and which
indebtedness was evidenced by promissory notes executed in 1916,
and which said notes had from time to time been renewed and
extended." (11) " Defendant shows that at the time of the
execution of the first of the notes just referred to, the county, by
virtue of an accumulation of debts through a period of three years,
faced a floating deficit of approximately $28,000.00, which said
deficit was not occasioned by any casual deficiency of revenue, and
which said deficit did not occasion any casual deficiency of
revenue."

To this amendment the plaintiff, the Citizens Bank of Moultrie,

demurred both generally on the ground that the answer as amended did not set up a defense to the petition, and specially because paragraph 9 merely stated a conclusion of the pleader, in that it does not appear in said paragraph or elsewhere in the answer what kind of notice plaintiff had that the note was contrary to article 7, section 7, paragraph 1, of the constitution, nor how this note was given to the plaintiff. We think the court should have sustained the general demurrer to the answer. In view of what has been said as to the sufficiency of the original answer, it must be plain, in view of the recitals both in the resolution of the county commissioners and in the note itself, that the defendant was estopped to deny liability upon any other ground than that the holder of the note was not a bona fide purchaser. This the defendant attempted to do; but inasmuch as the statement of the final amendment, that the defendant " denies that the plaintiff is or was a bona fide holder of the note sued on before maturity and without notice of the defense pleaded thereto, and of this it puts itself upon the county," states no facts to authorize this inference, it does not authorize the raising of an issue upon the facts stated in the petition, in the absence of a denial of those facts stated by the plaintiff which would make it by law a bona fide holder of the note. The amendment denying that plaintiff is a bona fide holder rests upon a tacit admission of facts from which the law must construe that the plaintiff was a bona fide holder. Taken as a whole, none of the averments of the answer contradicted the statement of the petition that there was a casual deficiency of revenue, and that everything had been done, performed, and executed which was required by law; and the defendant was estopped, in the face of these recitals, to set up that the note was issued contrary to the provisions of article 7, section 7, paragraph one, of the constitution of the State, or to aver that the note was not executed for the purpose of supplying a casual deficiency of revenue. The plaintiff was not concerned with the application of the money, for the note was in fact purchased before maturity (that the purchase was made before maturity was not denied). If as a matter of fact, through the misfeasance or malpractice of the county commissioners or even by carelessness, the note was delivered to Frank Scarborough Company and by reason thereof the County of Rockdale never received anything

upon the note, the county must look to those responsible for the management of its affairs, and not to one who purchased the paper upon the faith and credit of the county and with just confidence in the statement of facts incorporated and recited in the note.

Even if the defense attempted to be set up in that part of the answer which denies that the plaintiff was a bona fide purchaser without notice were perfect in form, it could not avail in the face of the admissions of the defendant and the contents of the note, unless it had been expressly denied that the note was delivered to Frank Scarborough Company and by it delivered to the bank before its maturity. It is not denied that the note was delivered, for a consideration, to the bank before its maturity; and this admission deprived the defendant of setting up the defense set forth in the amendment to its answer. Reading the answer as a whole, it is plain that the conclusion stated in the plea that the plaintiff was not a bona fide holder is based upon various statements in the paragraphs of the preceding amendment, which the defendant insisted and now insists evidenced notice to the purchaser of the note of its invalidity; and yet none of the allegations of any of the paragraphs of the answer or the amendment legally establish any foundation upon which the conclusion reached by the pleader can be based. As has already been ruled, granting that (as stated in paragraph 2 of the amendment) two other notes were executed at the same time as the note in question, and that said notes aggregated $15,000, and that these notes were delivered to Frank Scarborough Company in order that Frank Scarborough Company might use them in renewal or extension of three like notes at that time held by the Citizens Bank of Havre De Grace, and that (as alleged in paragraph 3 of the answer) Frank Scarborough Company, instead of using the notes for the purpose set out, negotiated one of them with the plaintiff and another with Frank Baker and another with the Exchange Bank of Fitzgerald and realized the face value of each of said notes, and (as stated in paragraph 4) that Frank Scarborough Company kept all of the money or proceeds and the defendant never received anything for said notes, these facts would neither support a plea of failure of consideration as alleged in the fifth paragraph of the answer, nor would they import such notice to a purchaser as would affect his

title to the notes or his right to collect them.    There is no statement that the notes were past due at the time of the delivery of the several notes to the three purchasers named by the defendant.    The fact that there was attached to each of the $5000 notes a resolution reciting the need for certain purposes of the sum of $15,000, and authorizing the county commissioners to execute notes for that sum, would not be notice to any of the several purchasers named by the defendant that the entire amount had been borrowed, in the absence of an allegation that there was such knowledge; and furthermore, for the reasons already stated in ruling upon the motion to dismiss, the authorization of the county commissioners of Rockdale County to borrow $15,000 would not be notice, when considered in connection with the recitals of the note that there was a casual deficiency of $15,000 which the county commissioners were authorized to raise by loan.

The seventh paragraph of the amendment is worthless for the purpose of laying the foundation for the plea that the bank, as purchaser of the note, had notice that the note was illegal and void, because under the rulings in *Wilson* v. *Gaston, Monk* v. *Moultrie, Wright* v. *Southern Railway Co.,* and *Mayor &c. of.Hogansville* v. *Planters Bank,* supra, and upon the presumption that every officer will perform his duty, the purchasers of these notes would have the right to assume that the county did not intend to create a new debt, but rather to balance its accounts for the year by a temporary loan to be paid from the taxes collectible for the current year.    The eighth paragraph of the answer alleged that a recital of a floating indebtedness of $15,000 was attached to each of said notes, which it is alleged should and did put the plaintiff upon notice that the note purchased by it was unconstitutional and void.    For the reasons already stated, and in view of the prior ruling of this court in this case and especially under the rulings of the Supreme Court of the United States in Knox *v.* Aspinwall, 62 U. S. 539 (16 L. ed. 208), the purchaser of the note did not receive notice, and was not obliged to take notice of anything not contained in the recitals upon the face of the note.

The statement of the ninth paragraph of the answer, to the effect that the plaintiff was not a bona fide holder of the note, because it had notice, before purchasing the same, that the note was contrary to article 7, section, 7, paragraph 1, of the constitution

of this State, presents no defense, under the ruling of this court when the case was here before upon demurrer, and when this court held that under the provisions of this particular note and the resolution accompanying it, unless it appeared that a casual deficiency did not in fact exist, the county could make a temporary loan even if the money thus obtained was used to pay current expenses, and consequently that "such note upon its face is not in violation of the constitution [supra; Civil Code of 1910, § 6563], so as to make it unenforceable."

For the reasons stated in Knox v. Aspinwall, supra, the defense attempted to be set up in the tenth paragraph of the answer to wit, "That said note was not executed for the purpose of supplying a casual deficiency of revenue; that in fact no casual deficiency of revenue existed at the time of the execution of said notes; and said notes were executed for the purpose of extending or renewing a past indebtedness of . . the County of Rockdale during a period of three years from 1913 to 1916, and which indebtedness was evidenced by promissory notes executed in 1916, and which said notes had from time to time been renewed and extended," is not available.

In the Knox case Mr. Justice Nelson said: "Another answer to this ground of defence is, that the purchaser of the bonds had a right to assume that the vote of the county, which was made a condition to the grant of the power, had been obtained, from the fact of the subscription, by the board, to the stock of the railroad company, and the issuing of the bonds." Paraphrasing this statement, we say a purchaser of this note had a right to assume that the casual deficiency which was made a condition to the grant of the power existed from the fact of the execution of the note. Continuing, Justice Nelson said in the Knox case: "The bonds on their face" (in this case the notes) "import a compliance with the law under which they were issued. 'This bond,' we quote, 'is issued in part payment of a subscription of two hundred thousand dollars, by the said Knox County, the capital stock, &c., by order of the board of commissioners,' in pursuance of the third section of act, &c., passed by the General Assembly of the State of Indiana, and approved 15th January, 1849. The purchaser was not bound to look further for evidence of a compliance with the conditions of the grant of the power. This principle was

33

recently applied in a case in the Court of Exchequer in England. (6 Ellis & Blackburn, p. 327, The Royal British Bank *v.* Tarquand.) It was an action upon a bond against the defendant, as the manager of a joint stock company. The defence was a want of power under the deed of settlement or charter to give the bond. One of the clauses in the charter provided that the directors might borrow money on bonds in such sums as should from time to time by a general resolution of the company be authorized to be borrowed. The resolution passed was considered defective. Jervis, Ch. B., in delivering the judgment of the court, observed: ' We may now take it for granted that the dealings with these companies are not like dealings with other partnerships, and that the parties dealing with them are bound to read the statute and the deed of settlement. But they are not bound to ·do more. And the parties here, on reading the deed of settlement, would find, not a prohibition from borrowing, but a permission to do so on certain conditions. Finding that the authority might be made complete by a resolution, he would have a right to infer the fact of a resolution authorizing that which, on the face of the document, appeared to be legitimately done.' (See also 5 Ellis and Bl., 245, s. c., and 25 E. L. and Eq., p. 114, Macle *v.* Sutherland.) The principle we think sound, and entirely applicable to the question before us." Paraphrasing the third headnote in the Knox case, we hold, as the county commissioners of Rockdale County are alone clothed with the determination of the question as to whether a casual deficiency exists, and are likewise clothed with lawful power to make a temporary loan to be paid from taxes to be levied or collected during the current year, and as the notes " on their face import a compliance with the law under which they were issued,'' that the purchaser of such note was not bound to look further for evidence of a compliance with the condition to the grant of the power.

The same reason applies to the eleventh paragraph of the answer. Under the recitals contained in the note executed by the defendant, the same doctrine of estoppel applies. Common honesty and good morals, as ·well as law, require that where one· of two innocent persons must suffer, he who contributed to occasion the loss must bear the burden. No matter what may be the loss entailed on Rockdale County, inasmuch as it was by the acts of·the

officers and agents of that county that the loss has been occasioned, under the well-recognized principle above stated, equity and good conscience require that the county which issued its notes and turned them loose on the commercial public should suffer rather than that the plaintiff should lose the money advanced by it upon the solemn representations made to induce confidence, which every principle of justice demands it should not be allowed to retract in order to avoid the payment caused in consequence of its own acts. Under the circumstances of this case, even as detailed in the defendant's answer, the county should pay this note, and seek its remedy for redress, if any, in a proceeding against the county commissioners. Since we are of the opinion that the answer of the defendant was insufficient to present any defense and that a verdict should as a matter of law have been directed in favor of the plaintiff, the subsequent proceedings in the case were nugatory, and the questions raised by the remaining assignments of error alleged to have been committed in the trial are moot. Mr. Presiding Justice Beck and Mr. Justice Hill authorize me to say that they concur in the views herein expressed.

HINES, J. This case was here on demurrer; and this court reversed the judgment of the trial court in sustaining a general demurrer to the plaintiff's petition. *Citizens Bank of Moultrie* v. *Rockdale County,* 152 *Ga.* 711 (supra). On the trial of the case a verdict was rendered in favor of the county. The plaintiff moved for a new trial, which motion was overruled; and to the judgment overruling its motion for new trial, to the ruling of the trial court refusing to strike the original answer of the defendant, and to the judgment of the lower court overruling the plaintiff's demurrer to the answer of the defendant as amended, the plaintiff excepts, and assigns error upon these several rulings in its bill of exceptions.

1. We must first determine the scope of the decision rendered by this court in this case, when it was brought here on exception to the judgment of the trial court sustaining a demurrer to the plaintiff's petition. It is earnestly urged by the plaintiff that this court held in that decision that, under the recitals of fact in the note sued upon and under the resolution of the county commissioners attached thereto, the county was estopped (a) from denying the existence of a casual deficiency in the revenue of the

county, and (b) from setting up that the debt authorized by said resolution and created thereunder, of which the plaintiff's note was a part, exceeded the constitutional limit of the authority of the county to borrow money to meet such casual deficiency of revenue. If this was the decision of the court, then it became the law of the case, and, whether sound or unsound, is now of binding force. But such was not the decision of this court. What did this court then decide? This court declared these propositions, to wit: 1. That "no county can incur any new debt without the assent of two thirds of the qualified voters thereof, 'except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein.'" 2. That where the county commissioners adopted the resolution attached to the note sued upon and gave such note, with the recitals embodied therein, "such note upon its face is not in violation of the provision of the constitution" referred to in the second headnote of that decision, so as to make it unenforceable. 3. That in a suit on said note by one who had purchased it for value, before due, and without notice of any defense, the petition alleging "that the consideration of the note was for money borrowed by the county to meet a casual deficiency in the revenue of the county for the purpose of paying the current expenses of the county," such petition, to which was attached a copy of the order of the commissioners and of the note sued on, was not demurrable on the ground that the plaintiff had taken it with notice that the note was not given to meet such casual deficiency, and therefore in violation of the provisions of the constitution above recited. 4. That the petition was not demurrable on the ground that the first count did not state a cause of action, for the reason this count showed that it was based on a note alleged to have been purchased for value. 5. That the petition was not demurrable on the ground that it was not alleged for what purposes the money was received by the treasurer of the county, how it was expended, or for what legal purposes the money was paid out, the allegation of the petition that the money received was paid out on the warrant of the commissioners being a mere conclusion of the pleader, not warranted by the facts alleged. 6. That the powers of public officers are defined by law, and all persons must take notice thereof. The public can not be estopped by the acts of

any officer done in excess of a power not conferred. 7. That "where authority to borrow money is conferred upon certain political divisions of the State by the constitution, and in pursuance of that authority the proper authorities of one of these political divisions (in this case the county commissioners of a certain county) borrowed money and gave a promissory note in which are recitals of fact showing the authority of such officers to borrow the money for a certain legal purpose, such recitals will estop the county, in a suit by a purchaser of the note bona fide, for value, before due, and without notice, from having the suit dismissed on demurrer on the ground that such note created a debt prohibited by the constitution of the State."

The above is a fair statement of the holdings of this court in the former decision. It is unnecessary to consider any of these holdings except holdings 2, 3, and 7. Holding No. 2 does not bear out the contention of plaintiff. From the facts alleged, it appeared that the county commissioners had passed a resolution authorizing the borrowing of $15,000 to meet a casual deficiency in revenue; and if this authority had been exercised to its full extent, it would have exceeded the constitutional limit. But it appeared from the allegations of the petition that the county had only borrowed $5000 to meet such deficiency. The note recited that this amount was within the limit prescribed by law. These facts appearing, the note sued on did not show on its face that it was in violation of this provision of the constitution. But when the case was here before, it was urged that the $15,000 was borrowed under this resolution, and that this exceeded the constitutional limitation. This court held that the demurrer on this theory was speaking, as it assumed the borrowing of $15,000 to meet a casual deficiency of revenue, when the petition alleged that only $5000 was borrowed for that purpose. This court did not hold, and certainly the writer did not intend to hold, that if the petition had alleged that $15,000, of which the note sued on represented a part, had been borrowed for this purpose, the petition would not have been subject to demurrer.

Holding No. 3 does not bear out the contention of plaintiff. The petition alleged that the consideration of the note sued on was for money borrowed by the county to meet a casual deficiency in its revenue. This court held, that, in view of this fact and a recital in the note that it was within the constitutional limit, the knowl-

edge of the plaintiff that the county commissioners had passed a resolution authorizing a loan in excess of such limit would not alone constitute notice to the plaintiff that the county was violating this constitutional provision. If the county commissioners authorized an excessive loan, but afterwards only borrowed an amount not exceeding the constitutional limit, the loan would not be a violation of such constitutional provision. To assume that the county commissioners had exercised to its full extent the authority given by this resolution would have been to inject in the case facts not alleged in the petition, and a demurrer seeking an adjudication on this state of facts was clearly a speaking one.

Holding No. 7 does not sustain plaintiff's contention. The resolution of the county commissioners authorized a loan of $15,000 to meet a casual deficiency in the revenue of the county. This authorized a loan in excess of the constitutional limit. The resolution further recited that a casual deficiency existed. The note recites that the principal thereof is within the constitutional limit. The county commissioners by these recitals would be estopped to deny the existence of a casual deficiency in the county's revenue. No estoppel can be based upon facts not recited, but which bear upon the legality and constitutionality of a transaction. Estoppels are not favored by law, and will not be enforced beyond the facts upon which they rest. What this court meant to hold when the case was here before, and what it did hold, was that when the county commissioners, having authority to borrow money to meet a casual deficiency in revenue and being proper officers to determine the existence of such deficiency, passed a resolution declaring the existence of such deficiency, the county would afterwards be estopped to deny its existence. When the case was heard in this court, on exception to the judgment sustaining the demurrer to the petition, two matters were urged by the county to uphold that judgment. One was that the resolution showed upon its face that the money was borrowed to pay current expenses, and not to meet a casual deficiency in the revenue of the county. This court did not so construe this resolution, but construed it to mean that there was such casual deficiency of revenue, and that the allegation that there was " a casual and temporary need of money to meet the current expenses of the county " did not negative this fact. The casual deficiency might have produced the need of ·

funds to discharge current expenses. The latter recital does not disprove the former. The other matter urged at that time was that this resolution showed, upon its face, that the note sued upon was given for more than one fifth of one per centum of the assessed value of the property of the county, and for this reason the demurrer to the petition was properly sustained. *Non constat* was the reply of this court. The amount of the note did not exceed this percentage of the assessed value of the property of the county. The note expressly recited that this amount was within the limit of the constitution. It did not appear from the petition that the county had in fact borrowed in excess of this limit. This court in effect held that the mere fact that this resolution authorized a loan of $15,000 did not amount to an allegation that the county had borrowed in excess of the constitutional limit; and to so hold would be to decide the demurrer upon assumed facts. For this reason this court held that the demurrer was speaking in this particular.

What this court said before must be construed in view of the well-settled law which defines what recitals by public officers, in borrowing money for a county or other political division of the State, bind the county or other political division, and what recitals do not bind the county or other political division. We shall undertake later to point out the distinction between these different classes of recitals. So we are of the opinion that the former decision of this court does not bear out the contention of the plaintiff; and that the county was not estopped from setting up the defense that its officers were undertaking to borrow a sum of money evidenced by a series of notes of which the note sued on was one, the amount of which exceeded the constitutional limit of the power of the county to borrow, and to establish facts showing that the plaintiff had notice of such scheme, or of such facts as made it incumbent upon plaintiff to ascertain whether the county was exceeding the constitutional limit.

2. Art. 7, sec. 7, par. 1, of the constitution of this State is in part as follows: "The debt hereafter incurred by any county, municipal corporation, or political division of this State, except as in this Constitution provided for, shall not exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality, or division shall incur any new debt,

except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law." Civil Code (1910), § 6563. It is now well settled, that while a liability for a legitimate current expense may be incurred, if there is at the time of incurring the liability sufficient money in the county treasury to meet it, or if a sufficient amount to discharge the liability can be raised by taxation, during the current year, county commissioners have no authority, without the assent of two thirds of the qualified voters of the county at an election held for that purpose, to borrow in behalf of the county money (not to supply a casual deficiency) to pay current expenses, although the notes evidencing the loan be payable within the current year and the general design be to discharge them from the anticipated revenue of that year. In *City Council of Dawson* v. *Waterworks Co.,* 106 *Ga.* 696 (supra), this court said: "A liability for a current expense can be incurred by a municipal corporation for any one year, provided there is, at the time of incurring the liability, a sufficient sum in the treasury of the city which may lawfully be appropriated to the payment of the liability incurred, or if a sufficient sum to discharge the liability can be raised by taxation during the current year; and such transaction would not create a debt within the meaning of that word as it is used in the constitution." There is nothing in this case which holds that a county can borrow money to pay current expenses or to discharge a liability incurred for a current expense. In *Hall* v. *County of Greene,* 119 *Ga.* 253 (46 S. E. 69), this court held that there was no authority in our law which authorized county authorities to borrow money to meet ordinary current expenses; and based this doctrine upon the *Dawson Waterworks* case. "The power to raise money by taxation to meet current expenses does not imply a power to borrow money for that purpose. *Dent* v. *Cook,* 45 *Ga.* 326; *Wood* v. *Comm'rs of Greene Co.,* 60 *Ga.* 556." *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801, 806 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244). In the case last cited this court construed the above ruling in the case of *Dawson* v. *Waterworks Co.,* supra, referring to it as a well considered one, which encomium was well founded; and laid

down this doctrine as supported by that case: " County commissioners have no authority to contract in behalf of a county for a loan of money (not to supply a casual deficiency of revenue) to be used in defraying current expenses, although the notes which evidence the loan be payable within the current year, and the general design be to discharge them from the anticipated revenue of that year." While the decision was by five Justices, it was a well-considered case. Mr. Justice Evans, delivering the decision, said: "While it is permissible, under the interpretation of the *Dawson Waterworks* case, for a county with an empty treasury to incur a liability for a current expense, to be discharged from the funds raised by taxation during the current year, and yet not create a debt, it does not follow that a contract for the loan of money to pay such liability is not a debt in the meaning of the constitution. There is a fundamental difference between incurring a liability to one person, and borrowing money from another to pay it."

In *McCord* v. *City of Jackson*, 135 *Ga.* 176 (69 S. E. 23), this court made this ruling: "Municipal authorities have no authority to contract in behalf of the municipality for a loan of money (not to supply casual deficiencies of revenue) to be used in defraying current expenses, although the general design be to discharge the notes given for such loan from the anticipated revenue of the current year;" citing *Butts County* v. *Jackson Banking Co.*, and *Hall* v. *County of Greene*, supra. In *Wright* v. *Southern Railway Co.*, 146 *Ga.* 581 (supra), this court held that a county might incur a liability for a legitimate item of expense, but was without authority to borrow money, without a vote of the people, to anticipate its revenue in the guise of a temporary loan, and referred to *Butts County* v. *Jackson Banking Co.*, as an authority sustaining that ruling. In *City of Marietta* v. *Dobbins*, 150 *Ga.* 422 (104 S. E. 444), the same principle was held and the Butts County case cited to support the ruling. So we think that it can be affirmed with confidence that this principle is now firmly settled by the decisions of this court; and that no county can borrow money, without the sanction of a popular vote, to pay current expenses.

It is perfectly clear that, under this constitutional provision, a county can resort to " a temporary loan or loans to supply casual deficiencies of revenue," only when such loan or loans do not exceed one fifth of one per centum of the assessed value of taxable

property therein, unless the assent of two thirds of the qualified voters thereof, at an election for that purpose, held as may be prescribed by law, is obtained for a bigger loan or loans; and that any loan made in excess of one fifth of one per centum of the assessed value of the taxable property of the county, without such assent, is void. A casual deficiency of revenue is some unforeseen or unexpected deficiency, or insufficient funds to meet some unforeseen and necessary expense. *Lewis* v. *Lofley,* 92 *Ga.* 804 (19 S. E. 57); *Comm's of Habersham County* v. *Porter Mfg. Co.,* 103 *Ga.* 613 (30 S. E. 547); *Hall* v. *County of Greene,* supra; *Wright* v. *Southern Railway Co.,* supra. Under this definition and under the facts of this case, there was no existing casual deficiency of revenue in the county; and the county was without authority to make this loan. For this reason the loan was void; but in view of the recital in the note the county was estopped to make this defense. Besides, this loan was made in violation of the above provision of the constitution. It was part of a debt of $15,000, evidenced by three notes of the county, one of which was the note sued on in this case. These three notes were companion notes. So as between the county and the original payee of these notes, the loan or loans were, even if made to meet a casual deficiency of revenue, in excess of one fifth of one per cent. of the assessed value of the property of the county, and were void. They would likewise be void in the hands of the plaintiff, even though it were otherwise a bona fide purchaser for value, before due, without notice of this infirmity, unless the county is estopped, from the recitals in the resolution of the county commissioners and those in the body of the note sued upon, from setting up the defense that this note is void because executed in violation of this provision of the constitution.

This brings us to consider the most difficult question in this case. Is the county estopped by the recitals in this resolution and this note? When the case was here before, this court held that the recital in the resolution, that a casual deficiency of revenue existed, was conclusive upon the county and estopped it from denying such recital. This ruling was based upon the doctrine that the county commissioners were officers clothed with power to determine whether a casual deficiency in the revenue of the county existed, and that, when they determined this question and passed a resolution

declaring that such deficiency did in fact exist, which resolution they attached to the note of the county, on which a lender advanced money to the county for that purpose, such declaration was an official statement of officers to whom the law refers the public for authentic and final information upon the subject; and that the county would afterwards be estopped from denying the solemn recital in such resolution of the existence of such deficiency. The fact of such deficiency being particularly, if not exclusively, within the knowledge of the county commissioners, and the lender having no practical means of ascertaining the existence of such fact, the county will be estopped to deny the statement of the trusted officers that such deficiency existed. The facts which a county, giving its notes for money borrowed, will not be permitted, against a bona fide holder, to question, in face of a recital in the note, are those which the law makes it their duty to ascertain and determine before the money is borrowed, " not merely for themselves, as the ground of their own action, . . but equally, as authentic and final evidence of their existence, for the information and action of all others dealing with them in reference to it." Northern Bank v. Porter Township, 110 U. S. 608, 617 (4 Sup. Ct. 254, 28 L. ed. 258) ; Dixon County v. Field, 111 U. S. 83 (4 Sup. Ct. 315, 28 L. ed. 360) ; Daviess County v. Dickinson, 117 U. S. 657 (6 Sup. Ct. 897, 29 L. ed. 1026) ; Lake County v. Graham, 130 U. S. 674 (9 Sup. Ct. 654, 32 L. ed. 1065). In Chaffee County v. Potter, 142 U. S. 355 (12 Sup. Ct. 216, 35 L. ed. 1040), the court said: " The statute, in terms, gave to the commissioners the determination of a fact, that is, whether the issue of bonds was in accordance with the constitution of the State and the statute under which they were issued, and required them to spread a certificate of that determination upon the records of the county." The same is true of the case of Gunnison County Commissioners v. Rollins, 173 U. S. 255 (19 Sup. Ct. 390, 43 L. ed. 689). But when facts upon which a county can borrow money are not to be ascertained by the officers charged with the duty of giving notes for money borrowed, but are matters of public record, no constitutional or legislative intent to authorize these officers to make conclusive recitals of such facts will be inferred, and lenders of money to the county can not rely on recitals in notes given by the county, but, to protect themselves, must search the records which will reveal the truth. Dixon

County v. Field, supra; Sutliff v. Lake County, 147 U. S. 230 (13 Sup. Ct. 318, 37 L. ed. 145); Commercial Trust Co. v. Laurens County, 267 Fed. 901.

The county having no authority to borrow money to meet a casual deficiency of revenue in excess of one fifth of one per cent. of the assessed value of the taxable property within its limits, an issue of notes in excess of such limit is void, since the tax-digest of the county will show such assessed valuation. Buchanan v. Litchfield, 102 U. S. 278 (26 L. ed. 138); Lake County v. Graham, supra; Lake County v. Collins, 130 U. S. 662 (9 Sup. Ct. 651, 32 L. ed. 1060); Doon Township v. Commins, 142 U. S. 366 (12 Sup. Ct. 220, 35 L ed. 1044); Nesbit v. Riverside Independent Dist., 144 U. S. 610 (12 Sup. Ct. 746, 36 L. ed. 562); 19 R. C. L. 1019, § 312. This is especially true where the debt limit is fixed by the constitution, because the legislature, having no power to authorize a loan to meet a casual deficiency in excess of such limit, can not do the same thing indirectly by authorizing county commissioners to make recitals which will estop the county from denying that such loan is in excess of such limit. Dixon County v. Field, supra; Lake County v. Graham, supra; Hedges v. Dixon County, 150 U. S. 182 (14 Sup. Ct. 71, 37 L. ed. 1044); McPherson v. Foster, 43 Iowa, 48 (22 Am. R. 215); Decorah Bank v. Doon, 86 Iowa, 339, 53 N. W. 301.

There is nothing to the contrary to what is said above in *Town of Climax* v. *Burnside,* 150 *Ga.* 556 (supra). In that case the bond sued upon " recited that all acts, conditions, and things required to be done precedent to and in the issuing of this bond have been done, happened, and been performed in regular and due form." The town set up as a defense that the validation of the bonds of the town was void on the ground that the validation proceedings were had in a county other than the one in which the town was situated, and that there were certain irregularities in the election for authority to issue bonds which rendered the election void. The distinction between that case and this is, that in the former the town attempted to prove certain irregularities in the election authorizing the bond issue, and in this case total want of authority to issue the note was shown.

But it may be said that, if the plaintiff had examined the tax-digest of the county before purchasing the note sued upon, the

MARCH TERM, 1923. **525**

tax-digest would have shown that the amount of this note was within the limit, and that the debt represented by this note was valid. This position would be sound, but for the fact that there was attached to this note, at the time plaintiff discounted it, a statement from the clerk of Rockdale superior court to Frank Scarborough Co., the payee of the note, reciting that it was made to furnish certain information for the purpose of obtaining a loan of $15,000. In this statement was this question and answer: "Under what law or authority are notes issued? Article Seven (7), Section Seven (7), of the Constitution of the State of Georgia; Code (1910), Section 6563." Here are stated sufficient facts to put the plaintiff on notice that the county was borrowing $15,000 and had issued notes therefor, one of which was the one sued on. An examination of the tax-digest would have shown that this loan was in excess of the constitutional limit, and that the note sued upon was void.

3. Applying the above principles, a verdict in behalf of the county was demanded under the pleadings and proof. Errors, if any, committed by the court in the admission of evidence, in refusing to give requests to charge, and in instructions given the jury were harmless, and do not affect the result.

I am authorized to say that Atkinson and Gilbert, JJ., concur in the conclusions above stated.